# SAMUEL A. STRANG *et al.*

## *v.*

# WILLIAM ALLEN.

1. REDEMPTION — *by a junior incumbrancer or his assignee.* A junior incumbrancer, not being a party to the bill to foreclose a prior mortgage, retains his right to redeem from such prior mortgage, unaffected by a decree of foreclosure thereof, and such right of redemption will pass to a purchaser under such junior incumbrancer.

2. SAME — *redemption from assignee of prior mortgage.* The purchaser under a junior incumbrancer having a right to redeem from a prior mortgage, notwithstanding its foreclosure, has the right to redeem from the assignee of such mortgage.

3. So, where a judgment creditor of a mortgagor redeems, as such, from the sale under the foreclosure of a prior mortgage, a junior mortgagee, who holds an intervening lien, between the elder mortgage and the judgment, may maintain a bill to redeem from such judgment creditor, he holding the relation of assignee of the prior mortgage.

4. SAME — *statement of account on bill to redeem.* The party having such right to redeem must pay the assignee of the prior mortgage the amount paid by him to redeem from the prior mortgage, with six per cent interest and the decree should be taken as the basis of the account, and not the original debt upon which the decree was rendered.

5. SAME — *rents and profits.* A mortgagee in possession must account to the mortgagor for the rents and profits, less the amount paid for taxes and necessary repairs, and the same rights and liabilities in regard to the rents and profits attach as between their respective assigns.

6. So, in stating the account between such parties, having the right of redemption, and the redeeming judgment creditor, as the assignee of the prior mortgage, there should be deducted from the amount to be charged to the party redeeming, the rents and profits received by such assignee of the prior mortgage while in possession of the mortgaged premises, less the taxes and necessary repairs; because a mortgagee in possession is always liable to account for the rents and profits received over and above the necessary repairs and taxes.

7. SAME — *where junior incumbrancer was not a party to the foreclosure.* It is proper, in stating the account, to charge the party seeking to redeem, with the amount paid to redeem from the prior mortgage — notwithstanding the junior incumbrancer, under whom the party seeking to redeem claims, was not a party to the proceeding to foreclose the prior mortgage; the decree of foreclosure of such prior mortgage must be taken as *prima facie* correct,

subject, however, to be attacked in that regard by the party seeking to redeem, by proper allegations in his bill, which he must sustain on the hearing.

8. NOTICE — *of taking proof before a master.* Where the cause is referred to the master to state the account, it is not sufficient to mail a letter to his attorney about three days prior to the time fixed for the hearing, thus allowing, had no delay occurred in the mail, barely time to reach the office of the master at the appointed time — such notice is not sufficient.

9. MASTER'S REPORT — *whether exceptions thereto necessary.* Where it appears from the record, that an improper decree has been rendered, it will be reversed, although objections may not have been interposed on the coming in of the master's report.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. IRA O. WILKINSON, Judge, presiding.

This was a suit in chancery, brought in the court below, by William Allen against Samuel A. Strang, and others, in which the complainant sought to redeem from a mortgage.

The facts are fully stated in the opinion of the court.

Mr. E. S. SMITH, for the plaintiffs in error.

Mr. CHARLES M. OSBORN, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears, from the record in this case, that Lathrop and wife conveyed the property in controversy, on the 19th day of July, 1856, to George E. Hoyt and Amos Avery, by deed, with covenants of warranty.

Three days afterward, they conveyed, by way of mortgage, to Jeremiah Chamberlain, to secure the payment of $698.50, with interest, due one year after date.

On the 15th of April following, Hoyt and Avery executed a trust-deed on the same land, to Charles M. Osborn, to secure a debt they owed to one Richardson. This deed, by its terms, was subject to the mortgage to Chamberlain, and provided, that, in case of default of the payment of the debt to Rich-

ardson, Osborn should make sale of Hoyt and Avery's equity of redemption, as attorney of grantors, and should execute a deed to the purchaser, in the name of the grantors, or in his own name, rendering the surplus money, if any, to the grantors.

Chamberlain, on the 24th of June, 1858, filed his bill in the Rock Island Circuit Court to foreclose his mortgage. He only made Hoyt and Avery and their wives parties to the bill; and in September following a decree of foreclosure was rendered against Hoyt and Avery for the sum of $789.90, the amount of his debt, and the decree ordered the payment thereof with interest and costs within thirty days, and awarding a special execution to the sheriff of the county for a sale of the mortgaged premises. An execution issued on the decree, on the 5th of November, 1858, directed to the sheriff. On the 27th of that month the property was sold by him for the sum of $832.69, and a certificate of purchase was given Chamberlain who had become the purchaser, which was duly recorded.

Afterward, on the 13th day of December, 1858, Osborn made sale of the property under the trust-deed, to Allen, and executed to him a deed at his bid of $1,200. It was executed in the name of Osborn, and by its terms it was subject to the Chamberlain mortgage, and all legal claims thereunder.

On the 22d of February, 1859, Chamberlain assigned his certificate of purchase to Howard and he to Lee.

On the 22d of February, 1860, plaintiffs in error redeemed from the sale to Chamberlain as judgment creditors of Hoyt and Avery. The judgments under which the redemption was made bear date, respectively, June and September, 1857.

On the 24th of March, 1860, the sheriff executed a deed to plaintiffs in error under the sale on their redemption.

Allen, on the 12th of July, 1864, filed his bill in the Rock Island Circuit Court to redeem from the mortgage of Chamberlain, and Hoyt and Avery, their wives, and plaintiffs in error, were made defendants to the bill.

Plaintiffs in error answered, but the bill was taken as confessed as to the other defendants. On the 23d of May, 1866, on a hearing of the cause, the court below entered a decree

allowing Allen to redeem from the Chamberlain mortgage, and that plaintiffs in error, who had taken possession under their sheriff's deed, account for rents and profits, and that they be applied on the redemption money paid in redeeming from the sale under the foreclosure of Chamberlain's mortgage, and that Allen pay the balance ($105.90) into court, and plaintiffs in error to release all claims to the land under the sheriff's deed.

To reverse this decree, the cause is brought to this court on a writ of error. The mortgage to Chamberlain, being the first incumbrance, and duly recorded, was entitled to preference over all other liens. But the deed of trust executed to Osborn to secure Richardson's debt, became a lien subject to Chamberlain's mortgage. It was so both by priority and by the terms of the deed of trust itself. It conveyed the equity of redemption retained by Hoyt and Avery when they executed the mortgage to Chamberlain, and Osborn had power to sell and convey that equity to any person becoming a purchaser at a sale to satisfy Richardson's debt. And this deed of trust was prior in date to the judgments under which plaintiffs in error redeemed from the sale on Chamberlain's foreclosure, and was consequently next in the order of liens upon the premises. This, then, left those jugments the last in the series of liens.

When Chamberlain foreclosed his mortgage the deed of trust to Osborn was a valid subsisting lien, junior to the mortgage, and the parties holding that lien, to have been affected by the decree, should have been made parties to the proceeding to foreclose, and, having failed to make them such, their lien was unaffected by that decree and the sale by the sheriff. Their right of redemption still continued unaffected by that proceeding. No principle of law is better settled or more fully recognized than parties holding liens on, or interest in, property, are not affected in their rights by judicial proceedings unless they are either parties or privies. It is equally well settled, that the purchaser at such a sale takes the property subject to all liens of record, and of which he is chargeable with notice, unless their rights are cut off by the judicial proceeding under which

he purchased. It then follows, that, as Richardson's lien was unaffected by the foreclosure of Chamberlain's mortgage and sale of the premises, the assignees of the certificate of purchase, and those redeeming from that sale, could claim no higher or better right than Chamberlain had by his purchase, and, the deed of trust to Osborn being on record when the foreclosure, sheriff's sale and redemption took place, the purchaser and the judgment creditors redeeming from the sale took it subject to be redeemed by those holding under the Osborn deed of trust; and, when Osborn sold, his grantee became invested with the same right of redemption that Osborn or Richardson had.

When Hoyt and Avery executed the deed of trust to Osborn, they transferred to him, as the trustee of Richardson, the equity of redemption. The latter, not being parties to the foreclosure suit, that equity of redemption was not foreclosed by the decree. It only foreclosed Hoyt and Avery's right to redeem, leaving other liens and rights in the property unaffected.

It is insisted that Osborn passed no title to defendant in error, by the conveyance to him, on the sale under the deed of trust, because he conveyed in his own name. The deed of trust conveyed express power to execute the deed in his own name, or that of his grantors. He, in the deed to defendant in error, refers to and recites a portion of the deed of trust, and explicitly states that he is acting under the power conferred by the deed of trust. We can, therefore, see no objection to the mode of executing the deed. The power was conferred upon him and he has followed it strictly, even if such power was necessary to be expressly given.

It is no answer to say that Osborn, Richardson and Allen had notice *lis pendens*, as they were not made parties.

This was their right at common law, and has not been altered by the statute.

Under the English practice, the person holding the equity of redemption was an indispensable party, to foreclose it.

If not made a party to the bill he had the right at any time to file a bill to redeem. Until he was in court and a decree

was rendered barring his equity of redemption, he was wholly unaffected by the decree.

It then follows that plaintiffs in error redeemed and received a deed for these premises subject to the right of defendant in error to redeem from the Chamberlain mortgage, whoever might be its owner. They, however, having succeeded to his rights, were entitled to receive the money then due on the Chamberlain mortgage which they had paid to become the purchasers of his right. They, however, obtained possession of the premises and received rents and profits from the use of the property; and only being in possession as assignees of Chamberlain's mortgage, they were in precisely as if the mortgagee had entered under his mortgage. And a mortgagee in possession is always liable to account for the rents and profits received over and above necessary repairs and taxes

Plaintiffs in error, representing the mortgagee while in possession, were liable to thus account for the rents and profits.

Before plaintiffs in error could be required to surrender the premises, they should be fully reimbursed all the money they were compelled to pay to redeem under the decree to foreclose Chamberlain's mortgage, with interest. The amount thus paid is the basis upon which the master should have proceeded to state the account. On it he should have computed interest at the rate of six per cent. This they are entitled to as a credit in stating the account. On the other hand, they should be charged with the rents and profits of the property received by them, after deducting all reasonable charges for repairs and for taxes and assessments paid on the property. Whatever there remains of the principal sum paid to redeem from the sale under Chamberlain's decree and the accrued interest, would be the sum which defendant in error would be required to pay for the purpose of redeeming. When let in to redeem it must be on equitable terms, and it is equitable that the sum paid to redeem should be taken, rather than the original note given to Chamberlain. The master therefore erred in adopting the sum named in the note as the basis in stating the account. It is urged that this objection comes too late, as it was not inter-

posed before the master, or upon the coming in of the report in the court below. As it regards the first of these objections, it is only necessary to say, that the notice of the time fixed for the hearing before the master was not sufficient. It was only by mailing a letter to the attorney of plaintiffs in error about three days previous to the time fixed for the hearing, when he resided in a distant city. He could not have more than reached the master's office by the day, had there been no delay in the mail or otherwise, and the attorney had been at home, and had left at once to attend. Such a notice cannot be held sufficient. The object in requiring it to be given, is, that parties may be heard in defense of their rights and not as a mere form.

It may have been the duty of plaintiffs in error, having appeared at the next term of the court, to object to the master's report. But when the report on its face shows, that it is based on a wrong principle—is erroneous, a neglect to do so does not preclude them from having the report, and the decree rendered upon it, reviewed in an appellate court, any more than would a default preclude them on a decree *pro confesso*. A party taking a decree on default, whether on the original bill or on a master's report, is bound to see that it is just and legal. The default of the defendant does not authorize him to take and insist upon an inequitable decree. When it appears from the record that an improper decree has been rendered, it will be reversed, although objections may not have been interposed on the coming in of the master's report.

For the error in stating the account, the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*

The foregoing opinion was delivered at the April Term, 1867; at the September Term following, Allen, the defendant in error, presented his petition for a rehearing, insisting therein, that the basis of computation which requires him to reimburse the assignees under the Chamberlain mortgage with the sum paid by them to redeem, with interest, rather than

with the amount due upon the original note given to Chamberlain, is erroneous, because, without default on his part, he was deprived of all opportunity to contest the decree in that regard, by reason of which, Chamberlain may have obtained a decree for a larger sum than he was entitled to, and bid that sum with interest and costs on his purchase; and, furthermore, that the assignees under the Chamberlain mortgage purchased the judgments subsequent to the trust deed, voluntarily, with full knowledge of his rights under it, and therefore that the costs which have accrued by their voluntary act should not be charged against him.

In denying this application the court delivered the following additional opinion:

Per CURIAM: It is urged that taking the amount paid by plaintiffs in error to redeem from the decree of foreclosure, might work great injustice, as defendant in error was not a party to the proceeding to foreclose the elder mortgage, and the decree may have been for too large a sum. We must presume that the decree is correct, unless it is shown to be erroneous. Plaintiffs in error had the undeniable right to redeem under their judgment, and could not under the law, without paying the full amount for which the premises were sold under the decree, with ten per cent interest. And having done so, they should be permitted to receive their money back with interest, unless it is shown that the decree was for too large an amount. And as the decree is *prima facie* correct, it devolves on the party seeking to redeem from the decree, to show that it was for more than was due on the mortgage.

In such cases, if the junior mortgagee conceives that the decree foreclosing the elder mortgage is too large, he should allege the fact in his bill, filed to redeem, and sustain it on the hearing. In this mode all wrong and injustice may be avoided. If mistake has occurred in rendering the decree foreclosing the senior mortgage, it can be thus corrected; and then the loss would fall on the person redeeming under his judgment from the decree.

Additional opinion of the Court.

It is true that the sum has been enhanced by the costs of the first foreclosure suit, but defendant in error and those under whom he claims might have redeemed, before the foreclosure suit was brought, and thus have prevented the accumulation of costs incurred for that purpose, as well as the increased interest; but they failed to do so, and failing to impeach the decree, it is but equitable that he should refund the amount paid by plaintiffs in error to redeem from the decree of foreclosure. Had he redeemed, plaintiffs in error would not have been induced to redeem, or become thereby the assignee of the first mortgage. The petition for a rehearing must be denied.

*Rehearing denied.*