THE TRUSTEES', EXECUTORS' AND SECURITIES' INSURANCE CORPORATION, LIMITED, *et al.*, v. THOMAS B. BOWLING.

## No. 107.

1. SHERIFF'S SALE—*Action on Bid.* When a sheriff makes a sale of real estate under process issued to him from the district court, and makes return thereof without having demanded and received the purchase-money, and the sale is confirmed, he can maintain an action against the purchaser to recover the amount of the bid; and the right so to do, when he has paid the amount to which a judgment creditor is entitled from the proceeds of such sale, is not defeated by the expiration of his term of office.

2. CONTRACT, *Made by Agent—Principal, When not Liable.* A principal is not liable on a contract of purchase of real estate entered into by his agent to one dealing with such agent with actual knowledge of the fact that the agent had previously exhausted his authority concerning the subject-matter of the contract, and when the principal has not thereby acquired any substantial benefit to which he was not already entitled under a previous contract.

3. ——— *Vendor's Lien.* In the absence of a special agreement therefor, a vendor's lien is not recognized in this state; and this rule is applicable in an action brought by a sheriff, after a deed of conveyance has been executed, to recover the purchase-money due from a purchaser at a sheriff's sale of real estate. In such action the claim for the purchase-money does not necessarily follow the land, and the judgment should not be made a special lien thereon.

4. ——— *Insufficient Evidence.* The evidence examined, and *held* insufficient to establish any personal liability as against the plaintiffs in error.

MEMORANDUM.— Error from Wyandotte district court; HENRY L. ALDEN, judge. Action by Thomas B. Bowling against The Trustees', Executors' and Securities' Insurance Corporation, Limited, and others, on a bid made at a sheriff's sale. Judgment for plaintiff. Defendants bring the case to this court. Reversed. The opinion herein, filed March 7, 1896, states the facts.

*L. H. Finney,* for plaintiffs in error.

*McGrew, Watson & Watson,* for defendant in error.

The opinion of the court was delivered by

GARVER, J. : This case presents a complicated condition of the matters involved, though the facts are without substantial dispute in the evidence. The only difficulty is to determine the correct legal conclusions which should be drawn from the facts, which are in substance as follows : October 10, 1889, three separate actions, numbered respectively 6104, 6105, and 6106, were commenced in the district court of Wyandotte county by the Missouri Valley Lumber Company for the foreclosure of certain mechanics' liens on 10 lots in West End addition to the city of Argentine, in said county. In No. 6104, J. H. Skillman was the principal defendant and the alleged owner of eight of the said lots, J. R. Bowers, another mechanic's-lien claimant, being joined as defendant. In No. 6105, the principal defendant was A. J. Heron, who was the owner of five of the lots at the time the contract for the materials was made, and when the right to the lien attached. In No. 6106, W. T. Brooks was the principal defendant,

and the alleged owner of the other five lots at the time the contract for the materials was made and when the lien attached.   Heron and Brooks, subsequently to the time when they contracted the liens foreclosed in Nos. 6105 and 6106, conveyed eight of these lots to Skillman, who made further and additional improvements thereon, on which liens were foreclosed in No. 6104.   The three cases involved independent and separate contracts with the lumber company, and the foreclosure of separate liens.   In each of these cases the plaintiffs in error were made defendants, and filed answers setting up certain mortgage liens claimed by them upon each of the 10 lots.   Bowers was not a party to and made no appearance in any case other than the Skillman case (No. 6104) ; and in that he set up a claim for a mechanic's lien, under contract with Skillman, on the eight lots which had been conveyed to him by Heron and Brooks.   January 16, 1890, judgments were rendered in all the three cases, determining that the lumber company was entitled to judgment against Heron for $596.20, against Brooks for $960.30 ; that such judgments were a first lien upon the 10 lots owned by Heron and Brooks respectively, and that the plaintiff in error had a second lien on each of said lots for $960, by virtue of certain mortgages executed by the respective owners of the lots.   In the Skillman case, judgment was rendered in favor of the lumber company for $401.68, and in favor of Bowers for $373.20, against Skillman ; the judgment of the lumber company was adjudged a first lien and that of Bowers a second lien on the eight lots owned by Skillman, but both liens were found to be subject and inferior to the mortgage liens.   The court decreed, in each case, that in default of payment in 10 days, an order of sale might issue for the sale of the property.

In the Heron and Brooks cases, it was ordered that the proceeds of the sales should be applied, first, to the payment of the costs; second, to the payment of the judgments in favor of the lumber company; and that the balance, if any, should be brought into court to be applied towards the payment and discharge of the mortgages. In the Skillman case, the court directed that the lots should be sold subject to the mortgage liens thereon, and the proceeds applied to the payment, first, of the costs; second, the judgment in favor of the lumber company; and third, the judgment in favor of Bowers. Pursuant to these several judgments, *alias* orders of sale were issued in each case June 18, 1890. In the Heron and Brooks cases sales were made on July 21 to one J. W. C. Glynn, for the sum of $2,005 in each case. Thereafter, on August 4, 1890, under the order of sale in the Skillman case, the sheriff again offered for sale and sold eight of the lots which he had previously sold on July 21 in the Heron and Brooks cases. The eight lots were appraised at $1,350, subject to the mortgage liens, and sold to J. W. C. Glynn on his bid of $1,000. The sheriff made a separate return to court in each case of having made sales as above stated. The three sales were confirmed October 13, 1890, and the sheriff's deeds executed October 15, 1890, to Glynn. On the sale made in the Skillman case no part of the bid was paid except the costs, amounting to something over $100. Subsequently Bowers began an action in the court of common pleas of Wyandotte county against the sheriff to recover the amount of his judgment against Skillman, alleging the failure of the sheriff to pay the same out of the proceeds which the return on the order of sale showed he had received from the sale in that case. Judg-

ment was rendered against the sheriff on the pleadings in that case, and the same was paid by him. In this action it was sought to recover from Glynn, and from the plaintiffs in error, for whom it was alleged Glynn was acting as agent in making his bid, the sum which the sheriff was required to pay Bowers. The court rendered a personal judgment as prayed for against all the defendants, and adjudged the same to be a first and prior lien on the lots sold under the order of sale issued in the Skillman case.

I. Various matters were discussed in the brief of counsel for plaintiffs in error and numerous errors assigned ; but an examination of the record convinces us that the entire controversy can be disposed of by the consideration of two or three general propositions. It is objected at the outset that the plaintiff, Bowling, cannot maintain this action, for the reason that his term of office as sheriff expired before this action was commenced. We cannot agree with counsel on this proposition. So far as there is a right to sue to recover a bid made and accepted at a judicial sale, which the purchaser failed to pay, it is a right growing out of the contract relation existing between the officer and such bidder. By returning a sale as made without having demanded and received payment of the bid, and by permitting the sale to be confirmed on such return, the sheriff became liable to a judgment creditor interested in the proceeds of the sale, the same as if the bid had been paid. In such proceedings against the officer he may not, as a rule, contradict his return. (*Ferguson v. Tutt*, 8 Kan. 370 ; *Studebaker v. Johnson*, 41 id. 326.) This, however, does not affect the previous contract of sale as between the officer and the purchaser. The officer becomes liable to the judgment creditor because it is his duty

to demand and receive the purchase-money at the time of the sale, and the law does not permit him, when called to account for such official act, to contradict his solemn return showing the performance of duty, for the purpose of shielding himself behind a failure to perform such duty. In making a judicial sale, the officer, in a sense, stands between the several parties as a representative of all, and an accepted bid is regarded as so far a personal contract between the purchaser and the officer that the latter may enforce it in his own name. (*Walker v. Braden*, 34 Kan. 660 ; *Armstrong v. Vroman*, 11 Minn. 220 ; *Gaskell v. Morris*, 7 W. & S. 32, 39 ; *Bell v. Owen*, 8 Ala. 312 ; *Nichol v. Ridley*, 5 Yerg. 63 ; *Jones v. Null*, 9 Neb. 254.)

The right to enforce such contract does not go to the successor in office of the sheriff. His successor could not in any way be held responsible for the non-payment of the bid, and has no interest, officially or otherwise, in the indemity to his predecessor on account of the payment of the money to a judgment creditor. The sheriff's official connection with the matter has terminated by payment. Any proceeding he may thereafter institute against the delinquent bidder is for the purpose of securing a personal indemnity to himself, and is not dependent upon the continuance of his official character.

II. The petition in this case alleges that J. W. C. Glynn acted, in making the purchase of the lots, as agent and trustee of the English and American Mortgage Company, and of the Trustees', Executors' and Securities' Corporation, and that the purchase was made in reality for such companies. After a careful examination of the record, we are unable to find anything which tends to support this allegation with reference to the latter company. On the contrary, the

evidence shows that the trustees' company's connection with these matters was only that of a trustee of an express trust; that it merely held such mortgaged securities as were deposited with it by the English and American Mortgage Company as security for debentures sold to other parties, or that it purchased from the mortgage company certain mortgages which the latter company had taken in its own name. The mortgages which were adjudged to be a lien upon these lots were held, either as owner or as trustee — the evidence does not show which — by the trustees' company at the time of the several foreclosures of the mechanics' liens. The English and American Mortgage Company — a separate corporation — generally looked after the foreclosure proceedings in which the trustees' company was interested, and employed the attorneys who appeared therein. That was done in the cases referred to in this case, and the attorneys so employed filed answers setting up the mortgage liens. The extent of the authority of the mortgage company in such cases is not shown; neither does it appear that the trustee's company had any knowledge, at any time, of the result of these particular foreclosures. At the time of the sale, Glynn, who purchased the lots, was in the employ of the English and American Mortgage Company, and subsequently, for a consideration of $150, conveyed six of the lots to Allison Z. Mason, trustee. The other two lots were conveyed by him to a Mrs. Hamilton, whose prior connection, if any, with these matters is not shown. The English and American Mortgage Company failed some time before this action was commenced, and Peter McMasters was appointed, December 21, 1892, as receiver of its assets and business. Allison Z. Mason was trustee for the mortgage company and for the receiver,

but we are not informed of the particular nature and extent of his trust. It does not appear that either McMasters or Mason had at any time any connection with the trustees' company. Under these circumstances, we fail to see how there could be any personal liability of either the trustees' company, or Mason, or McMasters, for the bid made by Glynn. In our opinion, the plaintiff entirely failed to establish any cause of action against either of them.

Even conceding that Glynn was acting as agent for the trustees' company in the purchase of the lots, we think the same legal conclusion must be made. The plaintiff had actual knowledge of the facts connected with the several sales, and was a party to everything that was done in the matter of selling and conveying these lots. The confusion that has arisen was caused by the plaintiff's advertising and selling property of which he had already made a legal sale. Under the judgment and orders of sale in the Heron and Brooks cases, the sales made July 21, upon confirmation and deed, vested in the purchaser the full legal and equitable title to the property, subject only to the right of Bowers to redeem, because he was not a party to those actions. Had the proceeds of those sales exceeded the amounts of the prior liens of the lumber company and of the mortgages, Bowers could have asked the court to apply such excess on his judgment and lien. In case there was no excess, he could have maintained an action to redeem by the payment of the amount of the prior liens. In any event, all interests and title of Skillman, Heron and Brooks in the lots were extinguished by the sale and confirmation; the only equity or right not foreclosed and barred being the right of Bowers to redeem. (*Strang v. Allen*, 44 Ill. 428; *Hoppin v. Doty*, 22 Wis. 621; *An-*

*son v. Anson*, 20 Iowa, 55 ; 2 Jones, Mortg. § 1395 ; 20 Am. & Eng. Encyc. of Law, pp. 614, 622.)

Having the three orders of sale in his hands at the same time — the one issued in the Skillman case directing the sale of only the equity of redemption of the owner, and the others directing the sale of the absolute title to the same property — the sheriff might have proceeded to a sale under either ; or, had he first sold the equity of redemption there would have been nothing inconsistent in his afteward selling the same premises for the satisfaction of the prior liens.  A more regular proceeding would have been — the three orders of sale together directing the selling of all interests in and full title to the property — to make but one sale and to dispose of all interests at the same time.  The proceeds of such sale could then have been applied on the several judgments according to the priority of their liens as had been determined by the court.  The sheriff did not see fit to follow this course ; but he must be presumed to have known that the execution of the orders of sale in the Heron and Brooks cases made it impossible for him to execute the order issued in the Skillman case.  After the sale of the premises, July 21, the Skillman order had lost its force.  Nothing remained for the sheriff to do but to return it with a statement of the facts.  This is very apparent when we consider that the latter order directed the sheriff to sell the premises subject to the mortgage liens, and that he had put it beyond his power so to do by a sale of the same premises, under an order of the court, which extinguished those very liens.  In lieu of such mortgage liens he had in his hands the proceeds of the July sale.  These he was directed to return into court that they might be applied to the payment of the mortgages.  No representations which Glynn, as

agent, might make under such circumstances, at the time of or subsequent to the August sale, could affect his principal; for, if he was agent to buy the property, his duty in that respect had been fully discharged and his authority exhausted by the July sale, and the subsequent confirmation and sheriff's deed transferred the title, subject only, as before stated, to Bowers's right to redeem.   Thereafter the agent of such company — the officer having full knowledge of the facts — had no right or authority to enter into a contract with such officers to pay an additional sum of money for a title which was inferior to that already possessed.

III.   It is contended that, even though the bid of Glynn created no personal liability as against the plaintiffs in error, Glynn was personally liable to make good his bid, and the law will raise out of the transaction a trust of such a nature as will permit the officer to follow the property and have a lien decreed against it for the purchase-money.   It is also claimed that Mason received the conveyance of this property from Glynn during the pendency of this action, and, therefore, it is liable in his hands the same as if no transfer had been made.   If the law gives any special lien in a case of this kind, we presume the position of counsel for defendant in error is well taken.   We do not understand, however, that this is an equitable action.   It is a simple action at law, on contract, to recover a sum of money which one of the parties to such contract agreed to pay.   True, the petition states that, at the time of the sale, certain statements were made by Glynn which were untrue with reference to the ownership of the liens upon the premises, and that such statements induced the plaintiff not to require the payment of the money on the bid, except the amount necessary to pay the costs of the action.

But there is neither allegation nor proof that such statements were not made in perfect good faith; nor is there any pretense that they were not true except as to the Bowers claim. Such allegations may have been proper as showing a reason, though not a legal one, for a failure to demand and receive the amount of the bid at the time of the sale, but they did not change the nature of the action. In the absence of a special contract in writing, a vendor's lien for unpaid purchase-money is not recognized in this state. ( *Simpson v. Mundee*, 3 Kan. 172 ; *Greeno v. Barnard*, 18 id. 518.) We see no reason why an exception should be made in this case, which has all the characteristics of an ordinary action for the recovery of purchase-money.

If we consider the equities of the case, we must concede that they are with the plaintiffs in error. The several parties having liens had to look to these premises for payment of their respective judgments. The only evidence given on the trial of this case as to the value of the lots was that coming from the plaintiff himself, who testified that, at the time of the sale, the lots were worth about $400 each. The liens of the lumber company upon the eight lots which were sold in the Skillman case, including the costs, amounted to about $2,000. The mortgage liens, as stated in the journal entry in the Skillman case, were $3,450, though it would seem from the findings of the court in the other cases that the mortgage liens were $690 on each lot. But taking it at the lower estimate, and there is over $5,000 as the amount of the liens which are prior to the Bowers lien, on property shown to be worth much less than that. For this property, including two other lots of apparently equal value, there was paid to the sheriff, on the July sales, $4,010. Out of

this about $1,800 was paid in satisfaction of the prior liens of the lumber company, including costs, leaving a balance of about $2,200 to apply on the mortgages. Equitably, therefore, Bowers's redemption interest in the property was conditioned upon his payment of about $5,400 on account of prior liens ; so that, if the sale made by the sheriff in the Skillman case could be regarded as a proper legal proceeding, the equities of the prior mortgage lien-holders were superior to those of Bowers as to the money obtained upon such further sale of the premises.    Viewing the case, therefore, from a merely equitable standpoint, we see no reason, even if this were an equitable action, why the court should reach out and appropriate for the payment of this claim property to which the plaintiffs in error are legally and equitably entitled until the full amount of their liens thereon had been paid.

Upon the several returns which the sheriff made of these sales, the court should have protected the rights of the respective parties by a distribution of the pur-chase-money according to their priorities and equities. Nothing of that kind appears to have been done.    The next proceeding is the action of Bowers against the sheriff to recover what he claimed as his portion of the proceeds of the Skillman sale.    The court of com-mon pleas of Wyandotte county, in which that case was brought, rendered judgment upon the petition of Bowers and the answer filed by Bowling thereto.    To such decision and judgment the plaintiff herein sub-mitted, without further contention, by payment.    We are of the opinion that upon the facts as disclosed in this case the sheriff had a full and complete defense to that action.    That he did not succeed is not the fault of the plaintiffs in error, and they are not bound thereby.

As Glynn makes no complaint of the personal judgment against him, it will not be disturbed. On the petition and the evidence offered under it by the defendant in error, the demurrer to the evidence should have been sustained. Upon all the evidence in the case, the judgment should have been in favor of the plaintiffs in error. As the facts are without substantial dispute, this court may direct such judgment to be entered as should have been rendered by the district court. It is therefore ordered that the judgment against the Trustees', Executors' and Securities' Insurance Corporation, Limited, Allison Z. Mason, trustee, and Peter McMasters, receiver, and against the property, be reversed, and judgment entered in their favor for costs.

All the Judges concurring.