[L. A. No. 252.  Department Two.—December 15, 1897.]

REBECCA R. ORD PESHINE, Respondent, v. ELIZA G. ORD et al., Appellants.

MORTGAGE BY DEED ABSOLUTE—ADVERSE POSSESSION OF MORTGAGEE—PRE-
SCRIPTIVE TITLE.—The fact that a mortgagor cannot maintain ejectment
against his mortgagee in possession until the mortgage debt is paid
does not preclude the mortgagee from acquiring a prescriptive title
by adverse possession; and where the mortgage was in the form of a
deed absolute on its face, and it appears that subsequent to con-
ditions broken there was a hostile possession of the mortgagee
under claim of title to the knowledge of the mortgagor, for more
than five years, a prescriptive title is acquired by the mortgagee,
and all remedy of the mortgagor, and of those claiming under him,
is lost by limitation.

ID.—QUIETING TITLE AGAINST MORTGAGEE—MAXIM—CONDITION OF ACTION—
STATUTE OF LIMITATIONS—LOSS OF REMEDY.—A mortgagor, or his suc-
cessor in interest, who seeks to quiet title against the mortgagee in
possession, is bound by the maxim that he who seeks equity must
do equity, and must pay the mortgage as a condition of success in
the suit; but if the mortgagee in such a case denies that there is
any equity to be done by the mortgagor, and has asserted title
in himself, the mortgagor or those claiming under him must pro-
ceed against the mortgagee within five years after an adverse
claim of title has been made manifest, or lose all remedy, whether
the debt or obligation secured by the mortgage has been paid or
not.

ID.—DIVESTITURE OF TITLE OF MORTGAGOR—DECREE OF DIVORCE—SUBSEQUENT
ACTS OF MORTGAGOR NOT BINDING—ADVERSE CLAIM.—Where the title of
the mortgagor has been divested by a decree of divorce, his sub-
sequent acts are those of a stranger to the premises, and cannot
defeat any rights acquired under the decree; and an agreement
made in a subsequent action brought by the mortgagor against the
mortgagee in possession, by the terms of which the mortgagor agreed
that the mortgagee was the owner of the premises covered by the
decree of divorce, cannot defeat the rights acquired under that de-
cree, though such agreement may serve to manifest an adverse
claim to the premises by the mortgagee, and to show that no re-
demption was contemplated between the parties to the agreement.

APPEAL from a judgment of the Superior Court of Santa
Barbara County.  B. T. Williams, Judge.

The facts are stated in the opinion of the court.

Richards & Carrier, for Appellants.

Wright & Day, for Respondent.

THE COURT.—Action to quiet title to a portion of a certain lot No. 97, outside lands of the town of Santa Barbara. On January 29, 1875, James L. Ord, then the owner of said lot 97, executed a deed purporting to convey the whole thereof to one Robert B. Ord, his brother, for the expressed consideration of fifteen hundred dollars. On August 20, 1875, in an action of divorce between said James and his wife, Augustias de la Guerra de Ord, the former district court rendered a decree whereby, in terms, a tract of eighteen acres off the west side of said lot—approximately one-half of the same—was apportioned and set over to the wife. Plaintiff is the daughter of said James and Augustias, and whatever title to the land was acquired by Augustias in virtue of said decree passed by her deed of gift, made June 1, 1878, to the plaintiff, who was then of full age. The present action was begun on December 8, 1891. Plaintiff claims that the deed of January 29, 1875, by James to Robert Ord, was intended to operate as a mortgage only; that the obligation secured thereby was discharged, and hence that the title she deraigns through her mother is valid against the defendants, who are the heirs at law of said Robert. Defendants deny these pretensions of the plaintiff, and plead also the statutory limitation—five years—prescribed for actions to recover real property, or to redeem from a mortgagee thereof in possession. (Code Civ. Proc., secs. 318, 319, 346.) All the issues were found in plaintiff's favor by the court below.

It is alleged by plaintiff that the deed of January 29, 1875, was made to secure the payment of money, and the finding of the court was similar; it was not alleged nor found what amount was thus secured, nor when it was payable, nor to whom; but it seems to have been the theory of the case made for plaintiff that Robert Ord became security on the note of James Ord to a certain bank, payable June 26, 1875, and that James made said deed to indemnify Robert against loss from such relation of suretyship; that Robert paid the note, and afterward received funds of James sufficient for his reimbursement. Much vagueness permeates the plaintiff's case, though possibly the findings and judgment should not fall on this account alone. (*Cline v. Robbins*, 112 Cal. 581.)

Subsequently to the decree of August 20, 1875, by which, plaintiff alleges, title to the tract in suit passed from James Ord, said James made to Robert Ord other conveyances of land in the same vicinity, all absolute in form, but claimed now by James to have been executed by way of mortgage or else in trust to be managed and controlled by Robert for the benefit of James to pay the latter's debts and for other purposes. Some of the lands included in these transactions were retransferred by Robert to James in 1876; the residue, together with the parcel in controversy here, continued in Robert's possession. In the month of October, 1886, as appeared from the evidence for plaintiff, James demanded of Robert a reconveyance of the property, and thereupon Robert repudiated and disavowed any fiduciary relations with James and refused to account for the profits of the land, and refused to convey any portion thereof remaining in his possession. On September 22, 1887, James instituted a suit against his brother for an accounting and to enforce a reconveyance of the property; pending which action, on October 20, 1889, Robert died. On June 28, 1890, a compromise of the suit was agreed upon in writing between James and the representatives of said deceased, with the approval of the defendants here, and in February, 1891, a judgment was entered disposing of the case accordingly. By the terms of such written agreement it was declared, in substance, that said James was the owner of certain parcels of the land described in his complaint in that action, that Robert had held the same in trust for him, and that such trust was fully executed; but, as to other portions of the lands which were the subject of the suit, including the tract involved in the present action, it was declared that James had no right, title, or interest, legal or equitable, in or to the same, and that Robert was the owner thereof when the action was begun, and that his heirs (the defendants in the present action) were owners of the same at the time of such agreement; said agreement contained no admission that the deed of January 29, 1875, ever had the character of a mortgage. There was further evidence, without conflict, that soon after the decree in the suit for divorce by which the parcel here claimed by plaintiff was set over to her mother, the latter requested a deed thereof from Robert Ord; that he refused, and then asserted that he had purchased the property

for cash paid to his brother, and that he owned the same. Robert Ord had exclusive and notorious possession of the land from 1875 until his death, and such possession was continued by his representatives or heirs after his death, and for more than five years next before the commencement of this action Robert and his said successors paid the taxes thereon.

"It is a settled rule," said the court in *Spect v. Spect*, 88 Cal. 443, 22 Am. St. Rep. 314, "that a mortgagor cannot maintain ejectment against his mortgagee until the debt is paid." Invoking this principle, counsel for plaintiff contend that from 1875 to 1890 the statute of limitations was not in motion against her title. They say that the mortgage "was not actually satisfied and discharged until the settlement, which was concluded June 28, 1890. Then for the first time a right of action by this plaintiff for possession of the premises accrued." But, from the inability of the mortgagor or his successor in the title to maintain an action to recover the premises in the possession of the mortgagee without discharging the mortgage, it does not at all follow that he may not be barred by adverse holding of the mortgagee. If the evidence here shows that the deed of January 29, 1875, by James to Robert Ord was a mortgage, it also shows that the condition thereof was broken years before the action commenced by the mortgagor against the mortgagee to compel a reconveyance. Of course, he who seeks equity must do equity, and a mortgagor who seeks to quiet title against the mortgagee in possession must pay the mortgage as a condition of success in his suit (*Brandt v. Thompson*, 91 Cal. 458); but if the mortgagee in such a case denies that there is any equity to be done between him and the mortgagor, asserts title in himself, and otherwise manifests an adverse holding, the mortgagor or those claiming in his right must proceed against him within five years or lose all remedy, whether the debt or obligation secured by the mortgage has been paid or not. (Code Civ. Proc., sec. 346; *Warder v. Enslen*, 73 Cal. 291.) Here there was a clear showing of a hostile holding against both James Ord and the plaintiff, beginning at least as early as the year 1886 and continuing for more than five years before the commencement of the action. Had James Ord not been divested of the title, and had he omitted to bring any action until the time the plaintiff set on foot the present suit—Decem-

ber 8, 1891—it is plain he would have been barred, and we think the plaintiff is in no better predicament. Her remedy was not saved by the action brought by James against Robert in 1887; the title of James was divested in the divorce suit twelve years before, and thenceforward his acts were those of a stranger to the premises. (*Barber v. Babel*, 36 Cal. 20, and cases cited.) Besides, he agreed with the heirs of Robert in that action that they were the owners of the land. Of course, this fact could not defeat any rights of the plaintiff, but it shows that as against her there was no abatement of the adverse claims of the defendants, and that no redemption of the land was contemplated by the parties to such agreement.

It follows that the finding that the alleged mortgage was discharged by the settlement of June, 1890, is not supported by the evidence. With the overthrow of this finding the judgment must fall.

For the foregoing reasons the judgment and order appealed from must be reversed, and it is so ordered.