[Sac. No. 1316.   Department One.—August 30, 1906.]

W. P. WADLEIGH, ANNA F. SMITH, and ELIAS P. SMITH, Respondents, v. JOSEPHINE A. PHELPS, Executrix of Will of T. G. Phelps, Deceased, Appellant.

ACTION TO REDEEM PROPERTY MORTGAGED BY DEED—DEMURRER TO AMENDED COMPLAINT — LACHES — ADDITIONAL DEBT. — Although a general demurrer to an amended complaint in an action to redeem property mortgaged by deed may raise the question of laches, upon the ground that a cause of action is not stated, yet, where there is nothing in the facts or circumstances alleged tending to show any inexcusable delay of plaintiffs in bringing the action, the mere fact that the amended complaint sets up additional indebtedness secured by the deed to that pleaded in the original complaint does not tend to support the demurrer on the ground of laches, where a cause of action is otherwise stated.

ID.—PARTIES—JOINDER OF PLAINTIFFS—SEPARATE DEEDS FOR SAME DEBT —SINGLE CAUSE OF ACTION.—Parties who made separate deeds to

secure the same debt were properly joined as co-plaintiffs in an action to redeem the property from the indebtedness, and the complaint by such co-plaintiffs states a single cause of action; the effect of the various deeds to secure the same debt was to combine all the property conveyed as a single security therefor, as completely as if there was but one conveyance and one mortgagor; and no redemption could be made as to part of the mortgaged premises without paying the whole debt.

ID.—PRESUMPTION IN FAVOR OF DEED—CONVINCING EVIDENCE OF MORT-GAGE — QUESTION OF FACT — SUPPORT OF FINDINGS — CONFLICT.— Though the presumption of law should always be applied, independent of proof, that an absolute deed is what it purports to be, and must prevail, unless the evidence is entirely plain and convincing that it was intended as a mortgage, yet the question is one of fact for the trial court, and its finding upon conflicting evidence that the deed was a mortgage will not be disturbed upon appeal if there is substantial evidence warranting a clear and satisfactory conviction to that effect.

ID.—PAROL EVIDENCE—WRITTEN MEMORANDUM.—The rule that parol evidence is admissible to show that a deed absolute on its face was intended as a mortgage is not affected by a written memorandum made by the grantee, indicating the conditions on which the deed was held, where there is no evidence that such memorandum was ever agreed to by the parties as a written contract.

ID. — EVIDENCE OF PLAINTIFF AGAINST DECEDENT — CONSTRUCTION OF CODE.—The evidence of a plaintiff against the deceased mortgagor as to matters of fact occurring before his death, in the action to redeem the mortgaged property, was not incompetent under section 1880 of the Code of Civil Procedure, which only applies to actions upon claims or demands against the decedent which might have been enforced against him in his lifetime by personal action for the recovery of money, and upon which a money judgment could have been rendered.

ID.—LACHES NOT PLEADED OR SHOWN.—Where no laches was pleaded in the answer, if it be considered that the court ever could find it from the evidence, without such pleading, the evidence in this case would not warrant such unusual action.

ID.—STATUTE OF LIMITATIONS — SUPPORT OF FINDING — MORTGAGEE IN POSSESSION—HOLDING NOT ADVERSE.—The finding against a plea of the statute of limitations cannot be disturbed where the evidence shows that the defendant was a mortgagee in possession, and that his holding was not adverse to the mortgagors at any time prior to his death.

ID.—TENDER—STOPPING INTEREST ON DEBT.—Under section 1504 of the Civil Code, a tender or offer of payment stops interest on the obligation, although there is no subsequent deposit of the money to keep the tender good.

ID.—CONDITIONAL OFFER—RECONVEYANCE OF PROPERTY.—Under section 1498 of the Civil Code a mortgagor who is entitled to have a reconveyance of the mortgaged property, upon payment of the mortgage debt, is entitled to make his offer of payment thereof depend upon the execution of such reconveyance.

ID.—REMEDY IN PROBATE COURT—CONSTRUCTION OF CODE.—There being no written contract to convey the mortgaged property, the action to redeem from the mortgage debt was properly brought; and the plaintiffs had no remedy in the probate court under section 1597 of the Code of Civil Procedure, which only applies where deceased, was bound by written contract to convey.

ID.—EVIDENCE—CORRESPONDENCE BETWEEN MORTGAGOR AND MORTGAGEE. —Letters by mail between the mortgagor and mortgagee relative to their respective rights in the property, and their admissions in regard thereto, throwing light upon the question whether the deeds were given as security for debt, and whether there was any adverse holding by the mortgagee, were admissible in evidence.

ID.—BROAD MOTION TO STRIKE OUT LETTERS.—A motion which was too broad, to strike out certain letters, some of which were properly admitted, was correctly denied, regardless of the question whether some of them were irrelevant to the issue.

ID.—COMPENSATION OF MORTGAGEE IN POSSESSION.—A mortgagee in possession is not entitled to any compensation for personal services in the care and management of the property; and evidence of the value of his services was properly excluded.

ID.—FINDINGS—COSTS—EFFECT OF WRITTEN OPINION.—A written opinion stating that each party was to pay his own costs cannot preclude findings that plaintiffs are entitled to recover costs against the defendant. Such opinion is no part of the decision and is without legal effect, being merely an informal statement of the views of the court which is subject to modification. The legal expression of the views of the court is found only in the formal findings of fact and conclusions of law.

ID.—INTEREST OF JUDGMENT ALLOWING REDEMPTION.—The defendant is entitled to legal interest on the final judgment allowing redemption, less plaintiffs costs, until tender of the amount found due, as provided for therein, or if such tender is not made, until sale under foreclosure.

APPEAL from a judgment of the Superior Court of Nevada County, F. T. Nilon, Judge.

George F. Witter, Jr., for Appellant.

The demurrer should have been sustained for laches of the plaintiff in waiting seven and one half years after the deed of the property, and until after the death of the grantee.

(*Abraham* v. *Ordway*, 158 U. S. 421, 56 Sup. Ct. 894; *Sebring* v. *Sebring*, 43 N. J. Eq. 65, 10 Atl. 193; *Walker* v. *Ray*, 111 Ill. 321; *Curtis* v. *Lakin*, 94 Fed. 251; *Sullivan* v. *Portland etc. R. R. Co.*, 94 U. S. 811; *Mackall* v. *Casilear*, 137 U. S. 556, 11 Sup. Ct. 178; *Hardt* v. *Heidweyer*, 152 U. S. 558, 14 Sup. Ct. 671; *Barton* v. *Long*, 45 N. J. Eq. 844, 14 Atl. 565, 568, 19 Atl. 923; *Cadman* v. *Peter*, 118 U. S. 77, 6 Sup. Ct. 957; *Hammond* v. *Hopkins*, 143 U. S. 368, 12 Sup. Ct. 418; *Galliher* v. *Cadwell*, 145 U. S. 368, 12 Sup. Ct. 873; *Speidel* v. *Henrici*, 120 U. S. 377, 7 Sup. Ct. 610.) The written memorandum was known by Wadleigh and was impliedly assented to, and became a written contract. (*Wood* v. *Carpenter*, 101 U. S. 141; *Beckwith* v. *Talbot*, 95 U. S. 289, 291; *Thayer* v. *Luce*, 22 Ohio St. 74.) The holding was adverse. (*Andrus* v. *Smith*, 133 Cal. 79, 65 Pac. 320; Code Civ. Proc., sec. 322; *Unger* v. *Mooney*, 63 Cal. 592, 49 Am. Rep. 150.)

C. W. Cross, for Respondent.

The written memorandum was not signed by any one, and could not be a written contract. The possession of the mortgage was not adverse. (*Hunter* v. *Coffman* (Kan.) 86 Pac. 451, and cases cited therein.) The evidence is sufficient to sustain the findings, against limitation and laches and supporting the judgment.

ANGELLOTTI, J.—This is an appeal from a judgment given in favor of plaintiffs in an action brought to have certain deeds of conveyance, absolute in form, decreed to be in fact only mortgages, the amount due thereon ascertained, and conveyances of the property therein described ordered executed, upon the payment of the amount adjudged due. Other appeals taken by defendant from certain orders made after judgment, including an order denying her motion for a new trial, have heretofore been dismissed, and still other appeals shown by the transcript have been held unnecessary and fruitless, in that they were from non-appealable orders reviewable on the appeal from the judgment. (*Wadleigh* v. *Phelps*, 147 Cal. 135, [81 Pac. 418].)

The case made by the complaint as originally first amended,

and upon which the case went to trial and was partially tried, was substantially as follows: On November 15, 1889, defendant's testator, T. G. Phelps, loaned $5,500 to plaintiff Wadleigh, who gave Phelps his note for the amount, payable six months after date and bearing nine per cent interest. At the same time, as security for the payment thereof, Wadleigh and his wife gave Phelps a deed of conveyance of certain lots in San Francisco, Cal., and other property in the state of Washington. On August 1, 1890, Phelps loaned Wadleigh $1,000 more, which with the $5,500 and interest made his indebtedness $6,830, for which amount a new note, bearing interest at nine per cent per annum, and payable six months after date was given, and it was agreed that Phelps should continue to hold as security the title to the lands previously conveyed. On April 23, 1891, Phelps and Wadleigh sold two of the San Francisco lots for $2,500, $2,000 of which was credited on the note and $500 paid to Wadleigh. On November 13, 1894, there was due on said note $6,823, and Phelps claimed that Wadleigh owed him for moneys expended the further sum of $297, making a total of $7,120, for which amount a new note, bearing the same rate of interest and due six months after date was given by Wadleigh. On that date, Wadleigh was the duly appointed attorney in fact of plaintiff Anna F. Smith, and she, by her said attorney, executed to Phelps a deed of certain mining property in Nevada County of which she was the owner and holder of the legal title, but in which "said Wadleigh had an equitable estate and interest," and of which property she and Wadleigh were the owners. This conveyance was made as further security for the payment of the indebtedness evidenced by the note. After the execution of this note, it was agreed by said Wadleigh, Smith, and Phelps, that Phelps might work said mining claim and make temporary leases of portions thereof, and that the proceeds should be applied, first, to the payment of the actual costs and expenses of such operations, and the surplus toward the payment and satisfaction of the indebtedness due Phelps. In accord with this agreement, Phelps did work said mining claim and make leases of limited portions thereof, from which he received money which plaintiffs are entitled to have credited on the indebtedness. On April 14, 1899, Wadleigh and Phelps agreed in writing to the extension of the

$7,120 note, for a period of two years from that date. Phelps died June 11, 1899. His will was admitted to probate July 13, 1899, and defendant was then appointed executrix. Since his death, said executrix has continued to work said mine and make leases of portions thereof. Wadleigh did not know what amounts had been received by Phelps and his executrix on account thereof. He has demanded an accounting from the executrix, but the same was refused, the executrix claiming that all of the property conveyed belonged absolutely to Phelps. On April 18, 1901, Wadleigh tendered and offered to pay the full amount due, on condition that the executrix make good and sufficient deeds of reconveyance of the various properties conveyed as security, but the executrix refused to receive such tender or offer, except as an unconditional payment, claiming that neither Wadleigh nor Smith was entitled to the reconveyance of any property upon the payment of the indebtedness. This action was commenced February 8, 1902, in the superior court of Nevada County.

Defendant filed her answer, in which she denied that any of the deeds executed by Wadleigh or Smith were given as mortgages, claiming that they were what they purported to be,— viz. absolute conveyances.

Upon the issues thus made, the case came to trial. After the trial had proceeded for some five days, plaintiffs were permitted by the court to amend their complaint, by alleging that the deed of Anna F. Smith was given not only as further security for the payment of the $7,120 indebtedness evidenced by the note, but also as security for the payment to said Phelps of the further sum of $1,500 alleged to have been paid by said Phelps to one C. W. Cross. Defendant thereupon amended her answer, admitting the allegations of the complaint as to all the conveyances except that of the mining property, but denying that the conveyance of the mining property was a mortgage, and claiming that it was an absolute conveyance of the property to Phelps. She denied the allegation of due tender, and also set up various provisions of the statute of limitations.

Upon the trial, the question as to whether the deed of the mining property was intended as a deed absolute, or as security, and the question of adverse possession by Phelps of such property, were submitted to a jury impaneled to advise the

court, and both questions were answered in plaintiff's favor. The court adopted these findings of the jury, and found the facts to be in accord with the allegations of the amended complaint. According to these findings, there was due the estate of Phelps $11,112.03 on April 18, 1901, and it was adjudged that Wadleigh make payment thereof within thirty days after the judgment becomes final; that upon his failure so to do, the property be sold and the proceeds applied to the payment of the indebtedness; that if such payment be made by Wadleigh as provided, said executrix shall make and deliver the necessary reconveyances; and that if she fails to so do, a commissioner appointed by the court for that purpose execute such reconveyances. Plaintiffs were by the judgment awarded their costs.

This somewhat elaborate statement as to the pleadings has been considered essential to a proper understanding of some of the many points made and strenuously relied on by defendant for a reversal.

1. A demurrer was interposed to the first amended complaint and this was overruled. It was stipulated that the same demurrer be considered as interposed to the complaint as amended upon the trial and overruled.

The principal contention made here as to the ruling on demurrer is that the complaint on its face showed that the cause of action therein set forth was barred by the laches of plaintiff, and that the demurrer should, therefore, have been sustained upon the general ground stated therein that the complaint failed to state a cause of action. It is settled that the defense of laches may be set up in this way, where the laches is apparent on the face of the complaint, the condition then being that the complaint does not show equity, or, in other words, does not state facts sufficient to constitute a cause of action. (Kleinclaus v. Dutard, 147 Cal. 245, 250, [81 Pac. 516].) But, while conceding the general principle to be as enunciated in the many decisions cited by the defendant upon the doctrine of laches, we are utterly unable to see any basis for the application of that doctrine in the facts alleged in the complaint herein. There was absolutely nothing in the circumstances disclosed by this pleading tending to show any inexcusable delay on the part of plaintiffs in the commencement of proceedings to establish their claim, or any reason why it

would be inequitable to then enter upon an inquiry as to the validity thereof.

Whatever may be said as to the evidence, there was nothing in the facts alleged in the complaint to give the slightest intimation that Phelps ever did an act inconsistent with the theory that he held title to all the property involved, and held possession of the mining property, solely as security for an indebtedness of Wadleigh, the greater part of which—viz. the $7,120—was evidenced by the promissory note of November 13, 1894, and the time for payment of which was, only two months before Phelps's death, extended for a period of two years from April 14, 1899. There was nothing in the facts alleged to call for any assertion of their claims by plaintiffs prior to the death of Phelps and the maturity of the indebtedness. Immediately upon the expiration of the time of credit, plaintiffs offered payment, and demanded a return of the property. A large portion of defendant's argument in support of the claim of laches is based upon the fact that it was not until the amendment made during the trial that plaintiffs made any allegation as to an alleged $1,500 indebtedness being also secured by the deeds. We cannot see that these allegations as to an additional indebtedness in any degree detracted from the effect of the original claim that the property was conveyed to Phelps and held by him as security for the $7,120 note and interest. That claim continued under the amended pleading, and the effect of the amendment was simply to show that there was still another item of indebtedness for which the property also stood as security, and which must be satisfied before a reconveyance could be had. We see nothing in the complaint upon which it can be held that defendant's general demurrer for want of facts should have been sustained on the ground of laches.

The demurrer also specified misjoinder of parties plaintiff, to wit: the joinder of Wadleigh with Mrs. Smith, and a misjoinder of causes of action, in that a cause of action in favor of Wadleigh was united with a cause of action in favor of Mrs. Smith.

The contention in this behalf is that, although all the property was mortgaged to secure the same indebtedness of Wadleigh to Phelps, Mrs. Smith was the only proper party plaintiff in an action to redeem as to her land, and Wadleigh

was the only proper party plaintiff in an action to redeem as to his land, and that the so-called respective causes of action of these two parties could not be joined.

There is no misjoinder of causes of action, for there is but a single cause of action stated. The effect of the various deeds given to secure the one indebtedness was to combine all the property thereby conveyed as a single security for the debt, just as completely as if there had been but one instrument of conveyance and but one mortgagor, and it is well settled that a mortgage creditor cannot be compelled to accept a partial payment of his claim, or make a partial surrender of his securities. No redemption as to a portion of the mortgaged premises can be insisted upon without a payment of the whole indebtedness. There can be no such thing as a partial redemption against the will of the mortgagee. While it is true that the owner of only a portion of the mortgaged premises may maintain redemption proceedings, his proceedings must necessarily be for a total redemption. "The debt being a unit, no party interested in the whole premises, or in any portion of them, can compel the mortgagee to accept a part of the debt, and to relieve the property *pro tanto* from the lien. . . . If the person redeeming has only a partial interest, and there are other partial owners also interested in having the lien of the mortgage removed from their estates, . . . he must himself redeem the whole mortgage, and his only equity against them consists in his right to enforce the mortgage upon *their* estates as a security for obtaining a *subsequent* contribution." (3 Pomeroy's Equity Jurisprudence, 2d ed., sec. 1220. See, also, *Gibson* v. *Crehore*, 5 Pick. (Mass.) 146; *Powers* v. *Golden Lumber Co.*, 43 Mich. 468, [5 N. W. 656]; 17 Ency. of Plead. & Prac., p. 949.) The action, whether brought by one or all of the parties entitled to redeem, is an action to redeem as to all the mortgages given to secure the single indebtedness, to accomplish a total redemption as to such indebtedness, and a complaint setting up the facts essential to such relief states but a single cause of action. The fact that two persons owning different portions of the mortgaged property join as plaintiffs in such an action, asking that upon payment of the indebtedness the alleged portion of each be conveyed to him, does not change the character of the action or cause the complaint to state two causes of

action. It is simply a case of two plaintiffs uniting in the statement of a single cause of action, each claiming a portion of the premises sought to be released from the mortgage, and each conceding the validity of the other's claim. What we have said upon this subject is undoubtedly the general rule. If that rule has been modified at all in this state by the provisions of our section 347 of the Code of Civil Procedure, relative to the case where there is more than one mortgagor, or more than one person claiming under a mortgagor, "some of whom are not entitled to maintain" an action to redeem against the mortgagee in possession, the modification has been thereby made only as to the case therein specified, and this is not such a case.

That two persons so situated may join as parties plaintiff in such an action is beyond question. Notwithstanding the fact that their interests in the mortgaged property are several, they have such a common interest in the subject of the action and in obtaining the general relief demanded—viz. the redemption as to the whole mortgaged property—as entitles them to join. (See Bliss on Code Pleading, secs. 73 to 76; Code Civ. Proc., secs. 278, 381.) By the judgment granting such relief in which they have a common interest, the ultimate rights of the plaintiffs as between themselves may be determined. (Code Civ. Proc., sec. 578.) Mr. Pomeroy, in his Code Remedies, says: "The rule which regulates actions to foreclose prevails also in those brought to redeem. As all the persons entitled to share in the mortgage debt must unite in the foreclosure suit, so in a suit to redeem the mortgagor and all others who have a common right with him to redeem must be made parties—in strict theory they should be co-plaintiffs. . . . The general doctrine above stated is strictly enforced in redemption suits of all varieties, the underlying principle being that a redemption must be complete and total, that the creditor shall not be compelled to accept a partial payment of his claim, or to make a partial surrender of his securities. When two tracts of land are mortgaged to the same person to secure the same debt, and they afterward come into the hands of different proprietors, one of them cannot be redeemed without the other; the owners of both the parcels and all persons interested in them must be parties to the action, if not as plaintiffs then at least as defendants." (Sec.

256.)   The principle therein stated is equally applicable where
two tracts have been mortgaged by different persons to another
person to secure a single indebtedness.

It is also clear that even if Wadleigh had no interest what-
ever in any of the real property mortgaged, he would be a
proper, if not a necessary, party in any action brought by
Mrs. Smith for an accounting and ascertainment of the
amount due on the mortgages and the redemption thereof.
(See Pomeroy on Code Remedies, secs. 249, 256, 257.)

Other points were made in defendant's opening brief in
support of the demurrer, but none of them are of sufficient
importance to warrant discussion here.

The demurrer was properly overruled.

2. A careful examination of the eight hundred and fifty
pages of the record showing the evidence given on the trial
of this case, has satisfied us that we would not be warranted
in disturbing the conclusion of both jury and judge to the
effect that the mining property deed of Mrs. Smith was given
solely as security for Wadleigh's indebtedness.  It is, of
course, the universal rule that the presumption of law, inde-
pendent of proof, is that such a deed is what it purports to
be—viz. an absolute conveyance—and that this presumption
must prevail unless the evidence to the contrary is entirely
plain and convincing.  This, however, does not mean that the
evidence in the record on appeal must be entirely plain and
convincing to an appellate court.  This question of fact, like
other questions of fact, is one for the trial court, and while,
as said in Sheehan v. Sullivan, 126 Cal. 189, 193, [58 Pac.
543], the appellate court will consider the question as to the
sufficiency of the evidence in the light of that rule, it will
not disturb the finding of the trial court to the effect that the
deed is a mortgage, where there is substantial evidence war-
ranting a clear and satisfactory conviction to that effect.  All
questions as to preponderance and conflict of evidence are for
the trial court.  The rule in this matter is declared in the
cases cited by defendant.  In Mahoney v. Bostwick, 96 Cal. 53,
[31 Am. St. Rep. 175, 30 Pac. 1020], the same contention as
to insufficiency of evidence was made; and this court, after
admitting that the presumption of absolute conveyance should
prevail unless the evidence to the contrary was entirely plain
and convincing, said: "But whether the evidence is of such

character and strength as to produce this conviction is a question for the trial court to determine. That court ought always to be governed, in weighing the evidence and reaching the conclusion as to the facts, by this rule, which requires the plaintiff, in an action like this, to present a case free from doubt, and unless the evidence is such as to leave in the mind of the trial judge a clear and satisfactory conviction that the instrument which in form is a deed was intended by all the parties thereto as a mortgage, the finding should be against the plaintiff. But we cannot say from the record which is before us that the superior court disregarded this rule in making its findings.'' In that case the court held that the evidence upon this material issue being conflicting in a substantial degree, the finding of the trial court that the deed was a mortgage must be allowed to stand. (See, also, *Penney* v. *Simmons,* 99 Cal. 380, 382, [33 Pac. 1121]; *Sherman* v. *Sandell,* 106 Cal. 372, 375, [39 Pac. 797, 798].) In the last case cited, it was said: "To the extent that its determination rests upon the mere preponderance of evidence, or upon the consideration of conflicting or contradictory evidence, the finding of the trial court is not open to review in this court.''

It would unduly lengthen this opinion and would serve no useful purpose to here review the great volume of evidence elicited upon this question. Counsel for defendant has ably and industriously made many points in his briefs in regard thereto that should have been, and probably were, made before the tribunal whose province it was to determine this question of fact, and whose decision thereon, in view of the evidence, must be held to be conclusive. It must suffice here to state that the positive evidence of three witnesses (including plaintiff Wadleigh) was to the effect that the title to the mining property of Mrs. Smith was received and held by Phelps, as security for the Wadleigh indebtedness, just as the title to Wadleigh's property previously conveyed was received and held; that such evidence finds some corroboration in the dealings between Wadleigh and Phelps and in the correspondence between them and the receipt given by Phelps to Wadleigh for the deeds delivered as security at the inception of the original indebtedness on November 15, 1889; that there is nothing in the record from which it can fairly be concluded that Phelps to the knowledge of Wadleigh ever assumed or

claimed to be the absolute owner of the mining property, free of claims of Wadleigh, Mrs. Smith, and others interested; and that there is nothing in the record that necessarily destroys the effect of all this evidence. There was in this sufficient support for the finding of the trial court to the effect that the deed of the mining property was given to secure the payment of the Wadleigh indebtedness.

3. Counsel for defendant does not dispute the well-settled proposition that parol evidence is admissible to show that a deed absolute in form was in fact given as a mortgage, but he claims that parol evidence was not admissible in this case as to the mining property, for the alleged reason that there was a separate contract in writing between the parties as to the terms upon which the property was conveyed and was to be held. The difficulty as to this contention is that there was no evidence of any such written contract. The unsigned memorandum in Mr. Phelps's handwriting, found among his personal effects after his death, wrapped about a quitclaim deed of this property from Mr. Phelps and his wife to Mrs. Smith, and apparently designed to accompany a deposit of this deed in escrow and serve as a memorandum of the terms and conditions upon which it was to be delivered, did not show such a contract. Wadleigh testified positively that the understanding was that such a deed should be placed in escrow for delivery to him upon the payment of his indebtedness to Phelps, but that he never saw or heard of the memorandum found, and never knew or assented to the conditions therein specified. There is nothing in any of his letters to Phelps to indicate the contrary. A different question would be presented were the evidence such as to warrant the conclusion that Wadleigh knew of the memorandum and its contents, and might be held to have assented thereto, and the cases cited by counsel for defendant would then be in point. It does not appear that any delivery in escrow was ever made. It should be noted in this connection, that Mrs. Smith was never in the state of California, and that Phelps never had any personal dealings with her, all the business being transacted through Wadleigh, who, apparently, was authorized by Mrs. Smith to use her property for his own purposes as he saw fit.

4. There is nothing in the point that, under section 1880

of the Code of Civil Procedure, Wadleigh was incompetent to testify as to any matter of fact occurring before the death of Phelps. It is settled that this provision of our law applies only to actions upon such claims or demands against the decedent as might have been enforced against him in his lifetime by personal action for the recovery of money, and upon which a money judgment could have been rendered. (*Myers* v. *Reinstein,* 67 Cal. 89, [7 Pac. 192] ; *Booth* v. *Pendola,* 88 Cal. 36, [23 Pac. 200, 25 Pac. 1101] ; *Fallon* v. *Butler,* 21 Cal. 24, [81 Am. Dec. 140].)

The case of *Bernardis* v. *Allen,* 136 Cal. 7, [68 Pac. 110], cited by defendant, was a suit brought to declare a partnership in mining property, against the successors of a deceased person, and it was there recognized that where an action is not technically founded upon a claim against the estate, the plaintiff is not within the prohibition of section 1880 of the Code of Civil Procedure. While the reasons for the rule declared in that section may be as applicable in a case of the character before us as in the case of a money claim against a deceased, the legislature has not seen fit to make the rule cover such cases.

5. No foundation for the defense of laches was laid by any averment in the answer of defendant. (*Cook* v. *Ceas,* 147 Cal. 614, 619, [82 Pac. 370].) As we have already held, the complaint on its face did not show laches. If we assume that, under such circumstances, a trial court, in the exercise of its own inherent powers, may ever, in the absence of such a plea in the answer, refuse relief upon the ground that the evidence shows laches, it is clear that the evidence was not such as to warrant any such unusual action by the court in this case.

6. It is strenuously urged that plaintiff's action is barred by the statute of limitations, but the finding of the court against this contention cannot be disturbed. Under section 346 of the Code of Civil Procedure, an action to redeem a mortgage of real property may be brought against the mortgagee in possession at any time, unless the mortgagee has maintained an adverse possession of the mortgaged premises for five years after breach of some condition of the mortgage. As long as the mortgagee in possession by the consent of the mortgagor is apparently holding as such mortgagee and by

virtue of his agreement with the mortgagor, and has not made manifest any other claim, his holding is not adverse. (See *Murdock* v. *Clarke,* 90 Cal. 429, [27 Pac. 275]; *Peshine* v. *Ord,* 119 Cal. 311, [63 Am. St. Rep. 131, 51 Pac. 536]; *Warder* v. *Enslen,* 73 Cal. 291, [14 Pac. 874]; *Husheon* v. *Husheon,* 71 Cal. 407, [12 Pac. 410]; *Raynor* v. *Drew,* 72 Cal. 307, [13 Pac. 866].) There was sufficient evidence to support the conclusion of the trial court to the effect that Phelps entered into possession of the mining property under the agreement alleged, the effect of which was to make him a mortgagee in possession, and that there was no adverse holding at any time prior to his death. The strongest evidence to the contrary is that contained in the letter of October 6, 1896, from Phelps to Wadleigh, which, taken in connection with all the rest of correspondence and the evidence as to the dealings between the parties, is not sufficient to warrant us in holding that the finding is not sufficiently supported.

7. There was no trust shown by either complaint or evidence, except in so far as there is always a trust relation between a mortgagor and a mortgagee in possession. The duties imposed upon Phelps by the agreement alleged and found were only such as are incumbent upon a mortgagee in possession. It was left optional with him to work the mine or not, and to make leases of portions thereof or not, as he saw fit, and under the law, independent of agreement, he was bound to pay from the rents and profits the expenses of such operations, and apply any net profits in the manner specified.

8. Defendant's contention that the amount adjudged to be paid to her by Wadleigh is too small is principally based upon the fact that interest was allowed on such indebtedness only to April 18, 1901, although this action was not commenced until February 8, 1902, and judgment was not given until June 30, 1903. The trial court found, and there was sufficient evidence to support the finding, that on April 18, 1901, Wadleigh, having with him two sacks of coin containing $13,500, and being able, ready, and willing to pay his indebtedness, offered in writing to pay to defendant, in the presence of her attorneys, the full amount due from him, upon condition that she make and deliver good and sufficient deeds of reconveyance of the mortgaged property, but that defendant refused to receive any payment except as an unconditional payment, and

CXLIX Cal.—41

expressly declared that she would make no reconveyance of any of said property. Although the precise amount named in the writing was $11,150, the offer was also to pay "any further sum of money due," and the evidence shows that the refusal to accept the terms of the offer was solely because of the condition annexed for a reconveyance of the mortgaged property, and that the giving of any reconveyance was absolutely refused. On April 23, 1901, defendant commenced an action against Wadleigh in the superior court of San Mateo County upon the $7,120 note. On May 24, 1901, Wadleigh filed his answer in said action, setting up the facts stated in his original complaint in this action, and also alleging that by reason of the fact that such note was secured by mortgage upon property none of which was in San Mateo County the court had no jurisdiction of the action. The court, on December 30, 1901, finding the last plea stated to be sustained by the evidence, gave judgment for Wadleigh.. Thereupon on February 8, 1902, this action was commenced. As already stated, in her original answer to the complaint in this action, defendant denied that any of the deeds were given as mortgages.

Our Civil Code is clear and explicit as to the effect of a tender upon the running of interest. Section 1504 provides: "An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation and has the same effect upon all its incidents as a performance thereof." Such was held to be the effect of a tender in *Ferrea* v. *Tubbs*, 125 Cal. 687, [58 Pac. 308] where it was also held that no subsequent deposit of the money was necessary in order to keep the tender good. We presume that there can be no question as to this under our existing code provisions, nor do we think that there can be any question as to there having been a tender "duly made." Section 1498 of the Civil Code provides: "When a debtor is entitled to the performance of a condition precedent to, or concurrent with, performance on his part, he may make his offer to depend upon the due performance of such conditions." Undoubtedly, Wadleigh was entitled to have the reconveyance of the mortgaged property delivered upon payment of the mortgage debt, and was, therefore, entitled to make his offer depend upon the execution by defendant of such reconveyances. (See *Kofoed* v. *Gordon*, 122 Cal.

314, [54 Pac. 1115] ; *Ferrea* v. *Tubbs*, 125 Cal. 687, [58 Pac. 308].)

According to the findings of the court, the amount named in the tender was more than sufficient to pay the indebtedness due on April 18, 1901, and the evidence appears to be sufficient to sustain this conclusion. There was evidence which, if believed by the trial court, was sufficient to warrant it in concluding that William Maguire, who actually superintended and managed the business of the mine, had an agreement with Phelps in regard thereto, under the terms of which he could not look personally to Phelps either for salary or money expended, but must look solely to the mining property therefor, and could continue in possession of such property until the proceeds thereof paid his claim. Maguire himself testified positively to this, and while he presented a claim against the estate of Phelps, such claim stated this agreement and stated no case of personal liability on the part of the deceased. Assuming all this to be true, as we must in view of the finding, the amount due Maguire from the mine was no part of the indebtedness due Phelps from the plaintiffs. If they recover the mining property, they will take it subject to any claim Maguire may have against it. We are unable to see any inconsistency in the findings as to the amount due.

A tender free from conditions which the creditor was not bound to perform having been duly made on April 18, 1901, the action of the court in refusing to allow interest thereafter accruing was correct.

9. The contention that the real motive of Wadleigh and Smith for the conveyances to Phelps was the defrauding of their creditors, is fully answered by the findings as to the purpose of such conveyances, which findings, as we have already held, are sufficiently supported by the evidence.

10. It is claimed that the court should have dismissed the action for the reason that, under section 1597 of the Code of Civil Procedure, the controversy between these parties could be settled only in the court having jurisdiction of the probate proceedings in the matter of the estate of deceased, and that the sole remedy of plaintiffs was by petition to that court. It is sufficient to say, in reply to this claim, that section 1597 of the Code of Civil Procedure as construed by this court, is applicable only where the deceased was bound by written con-

tract to convey. (*Cory* v. *Hyde,* 49 Cal. 469, 471; *Estate of Healy,* 137 Cal. 474, 478, [70 Pac. 455].)

11. It is claimed that many errors were committed by the trial court in admitting in evidence letters from Wadleigh to Phelps and from Phelps to Wadleigh. There is no claim that these letters were not received in due course of mail by the respective parties. An examination of those letters discloses no reason why they were not relevant and competent evidence. They constituted what were, in effect, conversations between the parties relative to their respective rights in the property that was subsequently in controversy, and were admissible, just as a conversation between the parties relative to such matters would have been admissible for the purpose of showing how each of these parties, to the knowledge of the other, regarded this property, with reference to their respective rights therein, and their admissions in regard thereto, thus throwing light upon the ultimate questions to be determined as to whether the deeds were in fact originally given solely as security for an indebtedness, and whether there was any adverse holding by Phelps.

It is suggested that the letters written prior to November 13, 1894, the date of the giving of the mining property deed, which was finally the sole matter in controversy, was incompetent and irrelevant so far as said property was concerned. If we assume this contention to be good, there was no error in admitting them, for, at the time of their admission, they were competent and relevant upon the then issues as to the other deeds. The motion to strike out, made subsequent to the amendments to the answer eliminating the issues as to such other deeds, was too broad, being a motion to strike out all letters, including those written subsequent to November 13, 1894, and was properly denied, regardless of the question as to whether the earlier letters were proper evidence upon the issue as to the mining property.

12. It is claimed that Phelps should have been allowed compensation for personal services in the care and management of the mining property, and that the court erred in excluding certain evidence offered to show the value of such services. Upon the case made by the findings, Phelps was, as to such mining property, simply a mortgagee in possession, and was, therefore, not entitled to compensation for personal services

on account of the mortgaged property. (See 3 Pomeroy's Equity Jurisprudence, 2d ed., secs. 1216, 1217; *Moss* v. *Odell*, 141 Cal. 335, 337, [74 Pac. 999].)

13. It is claimed that the judgment for costs in favor of plaintiff is erroneous, for the reason that in its written opinion in the case filed May 18, 1903, the court said, "Let each party herein pay his, her, or their own costs." In the findings and decision in writing, filed June 30, 1903, the court "further finds and decides, that the said plaintiffs are entitled to recover against the said defendant, judgment for the plaintiffs' costs in this action," and the judgment, following the findings and decision, ordered that "plaintiffs recover their costs incurred in this action." The claim is that the court having announced its view as to the costs in the written opinion, could not in the findings and judgment make different provision from that indicated in the opinion. This written opinion was, however, no part of the decision in the case, cannot be treated as such, and was entirely without legal effect. It was, as has been said by this court in a similar case, "no more than its name imports—the informal views of the court, subject to future modification, . . . the legal expression of those views being found, as only properly they could be found, in the formal findings of fact and conclusions of law." (*Montecito etc. Co.* v. *City of Santa Barbara*, 144 Cal. 578, 595, [77 Pac. 1113, 1119].)

We have now discussed what may fairly be said to be the main contentions of defendant.

14. Several hundred errors are assigned by counsel for defendant on this appeal, many of which assignments of error are based upon claims already discussed and disposed of. As to the others, we have examined each one, and find none that merits discussion here. There was no error that could be held to have prejudicially affected the substantial rights of the defendant—indeed, for a case which was apparently so strenuously contested and required so many rulings on the part of the trial court, the record is unusually free of even technical error.

In one respect, not referred to in the briefs, we think the judgment should be modified. Defendant is undoubtedly entitled to legal interest upon the amount adjudged due her, less the costs awarded plaintiffs, from the time the judgment be-

comes final to such time as the plaintiffs, under the judgment, tender her such amount, or in the event that they fail to make such tender, until the foreclosure sale ordered in that event has been had. We are of the opinion that the judgment as it now stands does not give her this, but limits her to the recovery of $11,112.03 less $1,185.05 costs, regardless of how long such payment may be deferred and regardless of the fact that the plaintiffs can have no legal right to the use of defendant's money, without interest, for a single day after the determination as to the relative rights of the parties has become final. The judgment should therefore be modified by inserting in the paragraph adjudging that Wadleigh have thirty days in which to pay the sum of $11,112.03 in gold coin, after the words "in gold coin," the following: "(less the sum of $1,185.05 hereinafter awarded plaintiff as costs), together with interest at the rate of 7 per cent per annum on $9,926.98 from the date on which this judgment shall become final to the date on which payment or lawful tender of payment be made"; and also in the paragraph providing for a commissioner's sale of the property in the event of non-payment, by inserting after the words "said indebtedness" in each of the three places wherein said words occur, "(less the sum of $1,185.05 hereinafter awarded plaintiffs as costs), together with interest at the rate of 7 per cent per annum on $9,926.98 from the date on which this judgment shall become final."

The judgment appealed from is modified as above indicated, and, as so modified, is affirmed. Appellant shall not recover her costs of appeal.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.