[No. 9832.   Department One. — December 18, 1886.]

## JAMES HUSHEON, RESPONDENT, *v.* PATRICK HUSHEON, APPELLANT.

DEED ABSOLUTE IN FORM WHEN A MORTGAGE — EVIDENCE OF DEFEASANCE. — Under sections 2924 and 2925 of the Civil Code, every transfer of an interest in land, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage; and the fact that the transfer was made subject to a defeasance may be proved, though it does not appear by the terms of the instrument.

ID. — DEED GIVEN AS SECURITY. — Whether a deed absolute in form be a mortgage or not is a mixed question of law and fact, to be determined from all the evidence, written and oral; and in determining it, all the facts and circumstances attending the transaction should be considered. If the deed were given as a security for a loan of money, a court of equity will treat it as a mortgage; and whether it was so given or not is the test by which its character must be judged.

ID. — NATURE OF INDEBTEDNESS — PROMISE TO PAY. — The debt to secure which the deed is given may be an antecedent debt, or one created at the time, or it may be advances to be thereafter made by the mortgagee to or for the mortgagor; and no accompanying written promise on the part of the mortgagor to pay the debt is necessary.

ID. — INADEQUACY OF PRICE. — Great inequality between the value of the property conveyed and the price alleged to have been paid for it is a circumstance tending strongly to show that a deed absolute in form was only a mortgage.

ID. — POSSESSION BY MORTGAGEE — AGREEMENT TO PAY INDEBTEDNESS — HINDERING AND DELAYING CREDITORS. — The action was brought to have a deed absolute in form, executed by the plaintiff to the defendant, adjudged a mortgage. On the 15th of July, 1876, the plaintiff was the owner of the land in question, which was then worth about four thousand dollars. He was indebted at the time in the sum of about twelve hundred dollars. Under these circumstances, he applied to the defendant, his brother, in whom he placed great confidence, for assistance. The defend-

ant agreed to pay the indebtedness of the plaintiff provided the latter would execute to him a conveyance of his land. The plaintiff thereupon executed the deed in question. At the same time a written defeasance was executed by the parties, to the effect that the defendant should take and hold possession of the land for six years, and that at the expiration thereof the land should be reconveyed to the plaintiff upon his paying to the defendant such sum of money as might then be found due him. After the expiration of the six years the plaintiff demanded from the defendant an account of the rents, issues, and profits of the land, and offered to pay him whatever sum might be found due. This demand the defendant refused, and claimed the land, which had greatly increased in value, as his own. *Held*, that the deed should be deemed a mortgage, and was not made to hinder or delay the creditors of the plaintiff.

Id. — ADVERSE POSSESSION BY MORTGAGEE. — *Held further*, that the defendant, during the six years in which he was in possession of the land under the agreement, was not holding adversely.

Id. — ACCOUNTING BETWEEN MORTGAGEE AND MORTGAGOR. — In stating the account between the parties, the court credited the defendant with all sums of money paid out by him for the plaintiff, and for taxes and improvements upon the property, and also with his expenses and a reasonable compensation for his time while attending to the plaintiff's business, with interest on the several sums at the rate of ten per cent per annum; but it refused to credit him with the expenses of a certain lawsuit brought against him by a third person. The court charged him with the value of the rents and profits of the land while he held possession of it, with the amount of a mortgage he had placed upon the land and had not paid, and with the value of certain work and labor performed by the plaintiff on another farm owned by the defendant. *Held*, that the account was properly stated.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. D. H. Chamberlin*, and *P. F. Hart*, for Appellant.

Where it is sought by parol evidence to show that a deed absolute in form is a mortgage, the evidence ought to be so clear as to leave no reasonable doubt that such was the intention of the parties; otherwise the intention appearing on the face of the deed ought to prevail. Tested by this rule, the evidence in the present case is insufficient. (*Henley* v *Hotailing*, 41 Cal. 26; *Bingham*

v. *Thompson,* 4 Nev. 707; *Pierce* v. *Traver,* 13 Nev. 531; *Hopper* v. *Jones,* 29 Cal. 18; *Albany* v. *Crawford,* 11 Or. 243; 2 Pomeroy's Eq. Jur., sec. 859; Kerr on Fraud, 421; 1 Jones on Mortgages, 286–335; *Kinney* v. *Con. Vir. M. Co.,* 4 Saw. 445; *Robinson* v. *Cropsey,* 2 Edw. Ch. 144.) The defendant's right of foreclosure was barred; consequently the right of the plaintiff to redeem was barred also. (*Grattan* v. *Wiggins,* 23 Cal. 35; *Cunningham* v. *Hawkins,* 24 Cal. 408; *Espinosa* v. *Gregory,* 40 Cal. 62; *Taylor* v. *McClain,* 60 Cal. 651.)

*S. M. Buck,* and *Horace L. Smith,* for Respondent.

The evidence shows that the deed in question was intended as a mortgage. (*Russell* v. *Southard,* 12 How. 109; *Flagg* v. *Mann,* 2 Sum. 486; *Poindexter* v. *McCannon,* 1 Dev. Eq. 373; S. C., 18 Am. Dec. 591; *Farmer* v. *Grose,* 42 Cal. 169; *Edrington* v. *Harper,* 3 J. J. Marsh. 471; *Montgomery* v. *Spect,* 55 Cal. 352; Civ. Code, secs. 2924, 2925; *Pioneer Min. Co.* v. *Baker,* 10 Saw. 539; *Horn* v. *Keteltas,* 46 N. Y. 611; *Morris* v. *Budlong,* 78 N. Y. 552.)

Belcher, C. C.—By this action the plaintiff seeks to have a deed executed by him to defendant adjudged to be a mortgage; and the facts of the case, as found by the court below, are substantially as follows:—

On the fifteenth day of July, 1876, plaintiff was the owner of 760 acres of land in Humboldt County, of the value of four thousand dollars. He was indebted to one Margaret Fitzgerald in the sum of about five hundred dollars, for which an action had been commenced against him, and his property attached. He had been a partner with one Comise in the dairying business, and Comise was claiming that a considerable amount was due him on partnership account, and was threatening to commence an action to settle up the partnership affairs. Plaintiff had no money, but it was necessary for him to be prepared to meet and settle these demands.

Under these circumstances, he applied to the defendant, who was his brother, and in whom he placed great confidence, for assistance. Defendant agreed to pay the Fitzgerald note, and also to defend any action that might be commenced by Comise, and to pay all the cost and expense of such action, and any judgment that might be recovered therein, provided plaintiff would execute to him a conveyance of all his lands. Thereupon plaintiff executed and delivered to defendant a deed of his lands, which was absolute in form. On the same day another paper was executed by the parties, which is now lost, but is called by some of the witnesses a lease, and by others a "back paper." By this paper it was, in effect, agreed that defendant should take and hold possession of the lands for six years, and that at the expiration of that time they should be reconveyed to the plaintiff, upon his paying to the defendant such sum or sums of money as might then be found due him. Under the agreement, defendant took possession, and has ever since held it. A few days after receiving the deed, he paid the Fitzgerald claim, amounting to the sum of $540, and thereafter, at divers times, paid out sums aggregating about $800, for costs and expenses incurred in the litigation between Comise and plaintiff, and to satisfy the judgment obtained by Comise in that litigation. After the expiration of the six years provided for in the agreement, plaintiff demanded from defendant an account of the rents, issues, and profits of the land, and of all sums of money due defendant, if any, and offered to pay him whatever sum might be found due; but defendant refused to account to or with plaintiff in any manner, and claimed to own all of said property absolutely. At that time the land had largely increased in value.

The action was commenced in January, 1883, plaintiff alleging in his complaint that the deed executed by him to defendant was intended to be and was given and accepted as security for the money to be paid for him by

defendant, and praying that it be adjudged a mortgage; that an account of the dealings between them be taken, and that he be permitted to redeem the property so conveyed upon paying to defendant all sums of money found due him, if any, and for a reconveyance of the lands to him by defendant.

Upon these facts, the court, by its judgment, granted to the plaintiff the relief demanded. The defendant then moved for a new trial, and his motion being denied, appealed from the judgment and order.

In support of the appeal, it is now earnestly contended that the deed in question was an absolute conveyance in fact as well as in form, and that the finding of the court that it was only a mortgage is not justified by the evidence.

In this state, every transfer of an interest in real property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage; and the fact that the transfer was made subject to a defeasance may be proved, though it does not appear by the terms of the instrnment. (Civ. Code, secs. 2924, 2925.)

Whether a deed absolute in form be a mortgage or not, is a mixed question of law and fact, to be determined from all the evidence, written and parol; and in determining it, all the facts and circumstances attending the transaction should be considered. If it were given as a security for a loan of money, a court of equity will treat it as a mortgage; and whether it was so given or not, is the test by which its character must be judged. (*Farmer* v. *Grose*, 42 Cal. 169; *Montgomery* v. *Spect*, 55 Cal. 352; *Peugh* v. *Davis*, 96 U. S. 332.)

In the last-named case, Field, J., delivering the opinion, it is said:—

" It is an established doctrine that a court of equity will treat a deed absolute in form as a mortgage, when it is executed as a security for a loan of money. That

court looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. As the equity upon which the court acts in such cases arises from the real character of the transaction, any evidence, written or oral, tending to show this, is admissible."

The debt to secure which the deed is given may be an antecedent debt, or one created at the time, or it may be advances to be thereafter made by the mortgagee to or for the mortgagor, and no accompanying written promise on the part of the mortgagor to pay the debt is necessary. (*Pioneer G. M. Co. v. Baker,* 10 Saw. 539; *Campbell* v. *Dearborn,* 109 Mass. 130; *Russell* v. *Southard,* 12 How. 139; 4 Wait's Actions and Defenses, 541, 542; *Horn* v. *Keteltas,* 46 N. Y. 605.)

One of the circumstances tending strongly to show that a deed absolute in form was only a mortgage is the fact, when it appears that there was great inequality between the value of the property conveyed and the price alleged to have been paid for it. As said in *Russell* v. *Southard, supra:* " In examining this question, it is of great importance to inquire whether the consideration was adequate to induce a sale. When no fraud is practiced, and no inequitable advantages taken of pressing wants, owners of property do not sell it for a consideration manifestly inadequate, and therefore, in the cases on this subject, great stress is justly laid upon the fact that what is alleged to have been the price bore no proportion to the value of the thing said to have been sold," citing *Conway* v. *Alexander,* 7 Cranch, 241; *Morris* v. *Nixon,* 1 How. 126; *Vernon* v. *Bethell,* 2 Eden, 110; *Oldham* v. *Halley,* 2 J. J. Marsh. 114; *Edrington* v. *Harper,* 3 J. J. Marsh. 354.

Tested by the foregoing rules of law, was the deed in question an absolute conveyance or a mortgage?

It is not pretended that the value of the property

when the deed was made was less than four thousand dollars, nor that there was any consideration for its execution except an agreement on the part of defendant to pay all of plaintiff's debts, including all claims then in litigation, or that might be brought against him. The amount to be paid on the Fitzgerald note was known to be only a little more than five hundred dollars. The only other debt was the Comise claim, which was uncertain in amount; it might be nothing, or might be several hundred dollars. Taking both of the claims together, we are unable to see how it could have been anticipated that the defendant would be called upon to pay more than a thousand or twelve hundred dollars. The consideration for the deed was then altogether inadequate, and it seems quite incredible that plaintiff would be willing to sell out all his property, even to his brother, for about one fourth of its value.

Upon the question whether a paper in the nature of a defeasance was executed by the parties, or not, the testimony was conflicting, and upon that subject we quote and adopt what was said by the court below in deciding the case:—

"Aside from the consideration of inadequacy of price, I am entirely satisfied from the evidence that at the time of the execution of the conveyance it was not only agreed and understood between the parties that plaintiff should have the right to redeem upon the payment to defendant of all sums which he had paid for plaintiff, but I am also satisfied that there was at the same time executed by the parties an agreement to that effect. This writing has not been produced in court, and diligent search and inquiry have failed to discover it. It is lost or destroyed. The defendant denies most emphatically that such an instrument was ever executed. He admits that there was some talk about it; that plaintiff wanted such a writing, but that he, the defendant, positively, refused to execute it. In my opinion the evidence

as to the execution of this paper is so overwhelming as to place it beyond all doubt. The plaintiff swears positively to it, gave his reasons why he wanted it, testifies circumstantially to the reading of it by Watson in the presence of Walsh, himself, and defendant, of his signing it, and defendant attaching his mark, being unable to write; also as to the controversy between them as to the duration of the lease, as it was called, or the time within which he should be allowed to redeem; and finally, at the suggestion of Walsh, fixing the term at six years. Incidentally it appears that he spoke of it to a number of parties at various times, sometimes calling it a bond for a deed, sometimes a lease, and sometimes using the homely but expressive term, a ' back paper.' The testimony of Walsh as to the execution of the paper is clearer and more satisfactory than that of the plaintiff. He was the mutual friend of the parties, and they consulted and advised with him and discussed the matter in his presence, and adopted his suggestion in fixing the duration of the lease at six years. He heard it read by Watson to the parties, heard them express their satisfaction at its contents, saw plaintiff sign his name and defendant make his mark, before this having sent them to Watson to get him to write it. He subsequently read it over himself, and kept it for about a year in his safe. He is quite certain that some one obtained it from him pending the Comise and Husheon litigation. Watson remembers distinctly of writing two papers, in which the parties were interested, and that Walsh had something to do with the negotiations, but fails to remember the contents or purpose. Walsh cannot testify minutely to all the terms of this lease, as he terms it, but does remember clearly that the purpose and object was to allow the defendant to use the land and stock for six years, the rents and profits to be applied in payment of plaintiff's indebtedness to him, and at the expiration of that time he was to deed back to plaintiff, upon the pay-

ment by him of the money expended in his behalf, if any should be due."

This is a fair review of the evidence, and in our opinion it correctly states its scope and meaning. It is true, it appeared that plaintiff had often spoken of the business relation existing between himself and defendant as that of a partnership; and that in a suit against the defendant, which involved the right to the personal property transferred, and was tried before a justice of the peace in 1877, he was a witness, and testified that he had no interest in the personal property, and incidentally that he had none in the land. But we do not consider these facts of any particular importance. Plaintiff was an ignorant man, and may well have supposed that the transaction established some kind of a partnership relation. So, as to the testimony before the justice. If plaintiff testified just as it is claimed he did, it may have been done honestly. He knew that he had deeded the land to defendant, and that defendant was in possession of it, and had a right to retain that possession for several years. Under the circumstances, he may have supposed that he had no interest in the land then, and would have none until he had settled with defendant, and paid back to him all sums of money which had been or should be advanced for his benefit.

Looking, then, at all the testimony, we agree with the court below that it clearly and satisfactorily appears that the deed in question was given as a security for the payment of moneys to be thereafter advanced by defendant, and that it should be held and treated as a mortgage.

It is also argued for the appellant that the deed was made to hinder and delay the creditors of plaintiff, and therefore he is entitled to and can obtain no relief from the courts against it.

On looking through the record, we are unable to find anything to support this claim. In his very able and

exhaustive brief, counsel for appellant says that, as the consideration for the deed, "defendant agreed to pay all plaintiff's debts, including all claims then in litigation, or that might be brought against him." If this be so, how can there be any plausible pretense that in making the deed plaintiff intended to hinder, delay, or defraud his creditors? We, at least, are unable to see how a needy debtor can be said to have violated any rule of law or good morals, because, to raise money to pay his just debts, he has turned over all his property as security to some one who has the ability, and has undertaken honestly and in good faith, to pay them.

Among other defenses interposed, defendant pleaded nearly all of the sections of the code providing for the limitation of actions, and it is claimed that under some one or more of these sections plaintiff's cause of action is barred.

If it be true, as found by the court, that defendant took and held possession of the land under a written agreement, which was executed by the parties, and provided in effect that plaintiff should have the right to redeem at the expiration of six years upon paying to defendant whatever should then be found due him, it is quite clear that there could have been no adverse holding of the land, and that defendant cannot now avail himself of any of the sections of the code which provide bars against the recovery of real property. So, too, it is equally clear that the paper constituted a written recognition of the debt from plaintiff to defendant, and a promise to pay it when the right to redeem should accrue, and consequently, that if defendant had instituted an action to foreclose, plaintiff could not have availed himself of any of the sections of the code which provide bars against the recovery of money. It must follow, therefore, that the rights of the parties were reciprocal and commensurable, and that the court properly held that the action was not barred.

In stating the account between the parties, the court credited defendant with all sums of money paid out by him for the plaintiff, and for taxes and improvements upon the property, and also with his expenses and a reasonable compensation for his time while attending to plaintiff's business, with interest on the said several sums at the rate of ten per cent per annum, but it refused to credit him with the money paid out for expenses in the lawsuit before the justice of the peace hereinbefore referred to; and it charged him with the value of the rents and profits of the land while he held possession of it, with the amount of a mortgage he had placed upon the land, and not paid, and with the value of certain work and labor performed by plaintiff on another farm owned by defendant. As the accounts were thus stated, it was found that the defendant had been fully paid, and that a balance of $217.30 was due the plaintiff, for which judgment was also entered in his favor.

It is now objected that the court erred in refusing to credit defendant with his expenses in the Justice's Court case, and in charging him with the rents and profits of the land, and for the work and labor of plaintiff.

But in the rulings of the court upon these matters we see no material error.

The action before the justice of the peace was brought by a third party against the defendant to recover the personal property, and it had no connection with the transaction in hand.

The defendant was a mortgagee in possession, and chargeable with the rents and profits of the mortgaged premises (*Ruckman* v. *Astor*, 9 Paige, 517; *Strang* v. *Allen*, 44 Ill. 428; 4 Wait's Actions and Defenses, 566, 577); and there was testimony tending to show that the value of the rents and profits was even greater than the amount allowed.

The court, in effect, found that the services of plaintiff
LXXI. CAL.—27

were rendered in part payment of the sums advanced by defendant under the original agreement; and the testimony of plaintiff that he never made any separate contract about the work, and never expected the defendant to pay him twenty-five dollars per month in money for his work, but supposed he was working in the interest of the general partnership between them, is in support, we think, of the court's view in the matter.

The plaintiff seems to have thought that the transaction between himself and defendant created a partnership between them, and that he was working to discharge the duty cast upon him by that relation. He was mistaken about the partnership, but his work was nevertheless performed to release him from the burden of debt which the transaction had imposed upon him.

It follows that the judgment and order should be affirmed.

FOOTE, C., and SEARLS, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.