MURRAY, Appellant, *v.* BUTTE-MONITOR TUNNEL MINING CO. et al., Respondents.

(No. 2,846.)

(Submitted June 25, 1910.   Decided July 2, 1910.)

[110 Pac. 497.]

*Personal Property—Transfer—When Considered Pledge—Inadequacy of Price—Option to Repurchase—Burden of Proof —Equity Cases—Findings—Review.*

Equity—Findings—Review.
  1. Under section 6253, Revised Codes, the findings of the trial court in an equity case will not be disturbed on appeal unless there is a decided preponderance of the evidence against them.

Corporate Stock—Transfer—Pledge—Evidence.
2.   Evidence *held* to show, as found by the district court, that a transfer of corporate stock was intended to secure a loan and not as an absolute sale.

Same—Transfer—When Considered Pledge to Secure Loan.
3.   Where a transfer of personal property had, in its inception, for its purpose a loan and not a sale, the transaction will be held to have been a pledge, unless it is made to appear that the parties later contracted for an absolute sale.

Same.
4.   In determining whether one, who, while in financial straits, transferred personal property to obtain means to relieve his situation (which was known to the transferee), intended the transaction as a pledge or a sale, a court of equity will take into consideration his necessitous condition, and be inclined to hold that a pledge was in contemplation, rather than an absolute sale.

Same—Transfer—Pledge—Inadequacy of Price.
5. · In determining the nature of a transaction alleged to have been an absolute sale of corporate stock, gross inadequacy of price ($20,000, whereas its value was testified to as from $75,000 to $150,000) was a circumstance lending support to the finding of the court that a pledge was intended.

Same—Transfer—Pledge—Burden of Proof.
6.   Where a transfer of property is absolute on its face, the party asserting that it was intended as security only assumes the burden of showing such fact by clear and satisfactory proof; where, however, there is a contemporaneous agreement to reconvey, the burden is upon him who contends that the instrument was an absolute sale.

Same—Transfer—Option to Repurchase—Nature of Transaction.
7.   In case of doubt whether a transfer of property, accompanied by an option to repurchase, was intended as a sale or as security for a loan, courts are inclined to hold in favor of the latter theory.

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

SUIT by James A. Murray against the Butte-Monitor Tunnel Mining Company and others.   Judgment for defendants, and plaintiff appeals.   Affirmed.

In behalf of Appellant, there was a brief by *Mr. R. L. Clinton.*

*Messrs. Walsh & Nolan* submitted a brief in behalf of Respondents.   *Mr. T. J. Walsh* argued the cause orally.   ·

Where, in a case of this character, inadequacy of consideration and mental weakness are found, the court will presume

either imposition or undue influence, and unless the *bona·fides* of the transaction are fully shown, the alleged sale will be set aside. (*Allore* v. *Jewell,* 94 U. S. 506, 24 L. Ed. 260; *Ashmead* v. *Reynolds,* 134 Ind. 139, 39 Am. St. Rep. 238, 33 N. E. 763; *Clark* v. *Lopez,* 75 Miss. 932, 23 South. 648, 957; *Harding* v. *Wheaton,* 2 Mason, 378, Fed. Cas. No. 6051; *Allen* v. *Allen,* 79 Vt. 173, 64 Atl. 1110.) The rule announced in these cases is indorsed in 1 Perry on Trusts, 187–189, and in 29 Am. & Eng. Ency. of Law, 112. And even though there should be nothing expressly shown by the evidence, the authorities hold that undue influence or imposition will be inferred from mental weakness and great inadequacy. (*Turner* v. *U. T. I. Co.,* 10 Utah, 61, 37 Pac. 91; *Fishburne* v. *Furguson,* 84 Va. 87, 4 S. E. 575; *Hale* v. *Kobbert,* 109 Iowa, 128, 80 N. W. 308; 2 White & Tudor's Leading Cases in Equity, 1242.)

MR. JUSTICE HOLLOWAY. delivered the opinion of the court.

Prior to the time of the transaction out of which this suit arose, William S. Switzer was indebted to G. W. and Guy Stapleton in the sum of $10,380, and, to secure such indebtedness, had delivered to the Stapletons in pledge certificates representing 1,500,000 shares of the capital stock of the Butte-Monitor Tunnel Company. The indebtedness having become due, the Stapletons brought an action to enforce payment and to foreclose their lien upon the stock. The action had gone to judgment, in favor of the Stapletons, for $17,969.27, including interest and costs, and the sheriff was about to sell the pledged stock, when Switzer secured from James A. Murray the money to discharge the Stapleton judgment, and at the same time secured an amount in addition thereto sufficient to make the total amount received by him from Murray $20,000. At the same time Switzer delivered to Murray certificates representing 2,146,650 shares of the capital stock of the Butte-Monitor Tunnel Company, indorsed in blank. The transaction between Switzer and Murray occurred September 1, 1908. In March,

1909, Murray made demand upon Switzer, the president of the tunnel company, and upon Maloney, its secretary, that they cause a transfer of the 2,146,650 shares to be made upon the books of the corporation. This demand was refused, and the present suit was brought against the tunnel company, Switzer and Maloney to compel such transfer.

Stated briefly, the complaint alleges that on or about September 1, 1908, Switzer sold, assigned, transferred and delivered to plaintiff the 2,146,650 shares mentioned above, for a valuable consideration, and ever since said date plaintiff has been the owner of said shares; that at the time of said sale plaintiff received from Switzer certificates representing the shares of stock and each of said certificates was duly indorsed by Switzer; that on March 15, 1909, plaintiff made demand on the president and secretary of the company that they make transfer upon the books of the corporation, that they receive the certificates so indorsed to him, cancel the same, and issue to him new certificates representing a like amount of the capital stock of the company, but that this demand was refused.

To this complaint the defendants made joint answer, but, as conceded by both parties to this appeal, the allegations of the answer are not material here, except in so far as they disclose the defense and equitable counterclaim of the defendant Switzer. Switzer alleges that at the time of the transaction with Murray, the 2,146,650 shares of stock were and ever since have been worth $150,000. The facts are then alleged to show that the transaction between Murray and Switzer, described in the complaint, amounted only to a loan of $20,000, by Murray to Switzer, and the pledging of the certificates representing the stock by Switzer to Murray to secure the loan. It is then alleged that at the time of the transaction, Switzer was a man of advanced age, was suffering from senile dementia, and was not mentally able to transact business of great importance, and that Murray is seeking to take advantage of him and to claim that the transaction was in fact a sale. A readiness and willingness to repay the $20,000 with interest is pleaded, and the answer concludes

with a prayer that Switzer be permitted to redeem the certificates upon paying to Murray the principal sum with interest. The reply puts in issue these affirmative allegations of the answer, reasserts that the transaction was a sale, and alleges that, at the time of its consummation, Murray executed and delivered to Switzer an option in writing to repurchase the stock on or before January 1, 1909, upon payment of $30,000.

Upon the issues thus made, the cause was brought on for trial before the court sitting without a jury. The trial court found that the transaction between Murray and Switzer amounted to a loan by Murray to Switzer of $20,000, and that the shares of stock were pledged by Switzer to Murray to secure the loan. A decree was rendered and entered which adjudges that there is due to Murray from Switzer $20,000, with legal interest thereon from September 1, 1908; that Switzer is the owner of the pledged stock; that, if Switzer shall within thirty days pay over to Murray the amount adjudged to be due, then Murray shall surrender up the certificates representing the stock, but if Switzer shall fail to make payment within the time limited, then Murray is directed to sell the stock at public auction, and apply the proceeds of the sale to the satisfaction of his claim and pay the overplus, if any, to Switzer. From the judgment and an order denying plaintiff a new trial, he has appealed.

In appellant's brief it is said: ''The only question for the court to determine is whether or not the transaction was a sale or a pledge of the stock.'' We do not agree with counsel as to the form of the question. The question thus stated correctly represents the controversy as it was presented to the trial court; but this is a court of review, and we have heretofore had occasion to define our relationship to the trial court under the provisions of section 6253, Revised Codes. Under the construction of that statute as heretofore given, we adopt the findings of the trial court, unless it appears that the evidence fairly preponderates against such findings. (*Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860; *Copper M. M.*

& S. Co. v. Butte & Corbin M. Co., 39 Mont. 487, 133 Am. St. Rep. 595, 104 Pac. 540.) In the last case this court said: "In equity cases, such as this, though this court may examine the evidence and determine the question of fact for itself (Revised Codes, sec. 6253), yet it may not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them." In view of the rule thus repeatedly announced by this court, the question which this appeal presents for our determination should be stated as follows: Does the evidence which this record contains preponderate against the finding made by the trial court, that the transaction between Switzer and Murray amounted only to a pledge of the stock as collateral security for the loan of $20,000?

On behalf of the plaintiff there is in the record the testimony of Murray and his agent Chapman that when application was made by Switzer for a loan, Murray declined to loan the money upon the security offered, but did offer to purchase Switzer's stock for $20,000, and to give Switzer an option to repurchase it at any time before January 1, 1909, upon payment of $30,000, and that this offer was accepted by Switzer, and that the offer and acceptance constituted the only contract between the parties. To this there is to be added the circumstance that there was not any evidence of indebtedness given by Switzer to Murray. In *Gassert* v. *Bogk,* 7 Mont. 585, 19 Pac. 281, 1 L. R. A. 240, this court said: "We are not to be understood as saying that there must be some promise in writing to pay the debt, where the mortgage is given to secure the payment of money; that promise may be implied from the facts. Still the absence of any writing showing an express promise to pay is said to be strong evidence that the transaction was not one of security." There is also in the record the evidence of two witnesses called by the plaintiff, who testified that at the time of the transaction the entire property of the Butte-Monitor Tunnel Company—the mining claims and improvements—was not worth more than $10,000. Upon that basis, Switzer's interest was worth approximately $5,800.

As opposed to plaintiff's contention, there is the evidence of M. V. Conroy, who testified that Switzer came to him, explained his financial difficulties arising from the fact that his stock was about to be sold in satisfaction of the Stapleton judgment, and solicited Conroy's aid in procuring a loan sufficient to meet Stapleton's demand and prevent the sale; that Switzer told him that he was willing to pay a good rate of interest.    Conroy then testified that he went to Murray's bank, and, Murray being absent, he presented the matter to Chapman, who told him that he would submit it to Murray; that soon after this Chapman telephoned to him that Murray was back in Butte; that he then started for Murray's bank but met Murray on the street, who directed him to send Switzer to him (Murray), and that he (Murray) would discuss the matter with Switzer; that he is informed that Switzer went to see Murray; that on the day before the sale was to occur he (Conroy) again met Murray, and talked the matter over with him, with the result that Murray said: "I don't want to see the Stapletons skin the old man [meaning Switzer], not that I have got any sympathy with the old man, but I don't want to see the Stapletons skin him, and, for that reason, I will make him the loan''; that on September 1 the transaction was closed at Murray's bank, Murray, Chapman, Switzer and Conroy being present; that Murray then paid over $17,969.30, the amount necessary to satisfy the Stapleton judgment, and this amount was taken by Conroy and Chapman to the sheriff and paid over to that officer, who in turn delivered to them the 1,500,000 shares of stock which had been advertised for sale; that this stock was taken back to Murray's bank; that when he and Chapman returned with the stock from the sheriff's office they found Switzer in the bank, indorsing the certificates representing the other 646,650 shares; that all of the stock was then turned over to Murray; that Murray then made out a check to Switzer for $2,030.70, the balance of the $20,000; that while Switzer was engaged in indorsing the certificates and after all the money had been paid over, Murray handed to him (Conroy) a paper, and said: "You keep this, the old man

doesn't know anything." The paper was introduced in evidence, and is the option to Switzer to repurchase the stock referred to above. Concerning this paper Conroy testified further: "I kept it. I have had it ever since. Mr. Switzer never saw it. I didn't want to show him. It wasn't our agreement, the agreement we had. I was afraid he would 'go up in the air." He also testified that prior to the time Murray handed him the paper there had not been any mention made of an option. Conroy further testified: "I only met Mr. Murray after the transactions, and, I think, the second or third day after the transaction occurred, and he told me that he found out that the property was more valuable than he thought it was, and he says, 'I can make a deal.' He says: 'I am going to New York, and I can make a deal on that property for the old man, and get him a good, handsome sum of money.' He says: 'I don't see what the old man wants more money for; he couldn't spend ten thousand dollars in the natural course of his life.' I says: 'That is not the condition. If the property is valuable, the old man is entitled to get what it is worth.'" He also testified that he received a commission of $1,000 for procuring the loan from Switzer, and that he gave $500 to Chapman. Chapman admits the receipt of the $500, but denies that it was commission for assisting in procuring a loan. There is some evidence in the record which may be said to reflect upon the credibility of some of the witnesses, particularly upon Conroy. But it will not be necessary to consider it at length.

We cannot imagine that the trial court attached much importance to Switzer's testimony, for his mental infirmity is painfully apparent; in fact, a guardian was appointed for him after the trial and before the appeal was perfected; but from all his evidence there is to be gathered the positive assertion that he never intended to sell his stock to Murray, but understood that he was securing a loan and pledging his stock as security. But the trial court was not left to determine the issue upon the uncorroborated evidence of Conroy and Switzer. There are a number of facts and circumstances which tend strongly to confirm their view of the transaction. These are:

(a) The transaction in its inception had for its purpose a loan, not a sale. All the witnesses agree that the original application to Murray was for a loan, to be secured by a pledge of Switzer's stock.

In 3 Devlin on Deeds, section 1117, the author says: "Where a·person who appears to be a grantor desired in the inception of the transaction to borrow money, and obtains the money, courts are inclined to say that the parties have made a mortgage, although the transaction may have assumed the form of a sale."

In *Cobb* v. *Day,* 106 Mo. 278, 17 S. W. 323, the court quotes with approval the following from 3 Devlin on Deeds, section 1118: "As the intention of the grantor in the beginning was to borrow money, the presumption is natural, unless an alteration of this intention is shown, that any transfer of his property connected with negotiations for borrowing money was made as security for a loan. And this is true though a different consideration than the one first sought be recited in the deed. The parties having treated as borrower and lender, the conveyance will be considered a mortgage, unless it appears that they afterward contracted for a sale of the property, without reference to the loan"; and then proceeds: "So we take the rule to be that the burden of proof is upon the party who alleges that an absolute deed is a mortgage, and that the proof must be clear and convincing. (*Worley* v. *Dryden,* 57 Mo. 226.) Yet, when the transaction had its inception in an application for a loan, the courts are inclined to scrutinize it closely, and to hold it a mortgage, unless it clearly appears the parties changed their minds afterward."

In 1 Jones on Mortgages, section 266 (fifth edition), it is said: "When an absolute conveyance has been made upon an application for a loan, and an agreement is made to reconvey upon payment of the money advanced, as a general rule the transaction is adjudged to constitute a mortgage. In such case the purpose of the grantor was in the beginning to borrow money; and unless a change be shown in his intentions it is presumed that any use he may have made of his real estate, in connection with it, was merely as a pledge to secure a loan. The parties having origi-

nally met upon the footing of borrowing and lending, although a different consideration be recited in the deed, it will be considered a mortgage until it be shown that the parties afterward bargained for the property independently of the loan." (See, also, 8 Ency. of Evidence, 710; *Eiland* v. *Radford,* 7 Ala. 724, 42 Am. Dec. 610.)

(b) Switzer was in financial distress at the time of the transaction. Upon this feature of the case there cannot be any conflict in the evidence. That Murray knew of Switzer's impending peril, occasioned by the advertised sale of his stock to satisfy the Stapleton judgment, Murray himself admits. Upon this subject the rule is stated in 27 Cyc. 972, as follows: "If the grantor was severely pressed for money at the time of the transfer, so as not to be able to exercise a perfectly free choice as to the disposition of his property, and raised the sum needed by conveying the property in fee with a right of repurchase, his necessitous condition, especially in connection with the inadequacy of the price, will go far to show that a mortgage was intended." And again, at page 1014: "If the grantor in a deed absolute in form, but alleged to have been intended as a security, was financially embarrassed at the time of its execution, being sorely pressed for money, and therefore at the mercy of his creditor and unable freely to dictate the terms of the security, this circumstance will be considered, as tending to show the intention to create a mortgage." (*Bright* v. *Wagle,* 3 Dana (Ky.), 252.)

In *Russell* v. *Southard,* 12 How. 139, 13 L. Ed. 927, the supreme court of the United States, in speaking on the subject, said: "It is true Russell must have given his assent to this form of the memorandum; but the distress for money under which he then was places him in the same condition as other borrowers, in numerous cases reported in the books, who have submitted to the dictation of the lender under the pressure of their wants; and a court of equity does not consider a consent, thus obtained, to be sufficient to fix the rights of the parties."

(c) The price which Murray claims he paid for the property appears to have been grossly inadequate. Upon the question of

value, the defendant Switzer called John Gillie, Guy Stapleton, John A. Cannon, James H. Maloney and John W. Eddy, men who appear to have had wide experience with, and intimate knowledge of, mining properties in and about Butte, and by these witnesses the value of Switzer's interest at the time of the transaction is fixed at from $75,000 to $150,000.

The rule upon this subject is stated in 1 Jones on Mortgages, section 275, fifth edition, as follows: "Inadequacy of price is one of the circumstances which are considered as of weight, as tending to show that an absolute conveyance accompanied by an agreement to reconvey is a mortgage rather than a conditional sale. This alone will not authorize a court to give the grantor a right to redeem, but in connection with other evidence affords much ground of inference that the transaction was not really what it purports to be. Inadequacy of price, to be of controlling effect, must be gross. If it be very inadequate, it is a circumstance tending to show a loan and mortgage; but it is not conclusive."

In *Russell* v. *Southard,* above, the supreme court of the United States was considering a case of a conveyance which on its face was apparently intended to evidence a sale. The consideration was something over $4,800, while the value of the property involved was from $10,000 to $12,000. The court said: "The deed and memorandum certainly import a sale; the question is, if their form and terms were not adopted to veil a transaction differing in reality from the appearance it assumed. In examining this question it is of great importance to inquire whether the consideration was adequate to induce a sale. When no fraud is practiced, and no inequitable advantages taken of pressing wants, owners of property do not sell it for a consideration manifestly inadequate, and, therefore, in the cases on this subject great stress is justly laid upon the fact that what is alleged to have been the price bore no proportion to the value of the thing said to have been sold." Then, after referring to the consideration which actually passed and the real value of the property in controversy, the court proceeds: "We cannot avoid the conclusion that this consideration was grossly inadequate;

and therefore we must take along with us in our investigations the fact that there was no real proportion between the alleged price and the value of the property said to have been sold.''

In *Husheon* v. *Husheon*, 71 Cal. 407, 12 Pac. 410, the court was considering a case in which the consideration for the transfer was not more than $1,200, while the value of the property was not less than $4,000. The court announced the general rule as follows: ''One of the circumstances tending strongly to show that a deed absolute in form was only a mortgage is the fact when it appears that there was great inequality between the value of the property conveyed and the price alleged to have been paid for it''; and applied it to the facts of the case in the following language: ''The consideration for the deed was then altogether inadequate, and it seems quite incredible that plaintiff would be willing to sell out all his property, even to his brother, for about one-fourth of its value.''

In *Glass* v. *Hieronymus*, 125 Ala. 140, 82 Am. St. Rep. 225, 28 South. 71, the court said: ''By uncontradicted evidence it is shown that the lands were worth nearly or quite double the amount paid by appellant. In cases of this nature, such a fact is usually considered as having an important bearing in favor of the mortgage theory.''

In *Campbell* v. *Dearborn*, 109 Mass. 130, 12 Am. Rep. 671, the court said: ''If there is a large margin between the debt or sum advanced and the value of the land conveyed, that of itself is an assurance of payment stronger than any promise or bond of a necessitous borrower or debtor. Hence inadequacy of price, in such case, becomes an important element in establishing the character of the transaction. Inadequacy of price, though not of itself alone sufficient ground to set in motion chancery powers of the court, may nevertheless properly be effective to quicken their exercise, where other sufficient ground exists (Story's Equity, secs. 239, 245, 246); and in connection with other evidence may afford strong ground of inference that the transaction purporting to be a sale was not fairly and in reality so.'' (*Eiland* v. *Radford; Bright* v. *Wagle,* above.)

In Jones on Pledges, section 20, it is said: "In determining whether a transaction in the form of a sale is a pledge or a sale, either absolute or conditional, inadequacy of price is a circumstance which indicates that it was only a pledge." (*McKinney* v. *Miller,* 19 Mich. 142.)

(d) According to Murray's own theory, the transaction did not amount to an absolute sale, but to a conditional sale; that is, a sale with an option to Switzer to repurchase. In many of the states it is held that where there is a deed absolute on its face, accompanied by a contract to reconvey, the transaction in law constitutes a mortgage; but in *Gassert* v. *Bogk,* above, this court declined to go to that extent, but did announce the doctrine which will hereafter be referred to. Most of the courts which do not hold that a deed absolute and a contract to reconvey constitute a mortgage, do hold that they are strongly indicative that a mortgage was intended. (20 Ency. of Law, 2d ed., 947; *Marshall* v. *Stewart,* 17 Ohio, 356.)

As reflecting upon the probability of Murray's version of the transaction, the trial court had before it these facts: (1) Switzer had an exaggerated idea of the value of the property, and had refused to sell it at prices ranging from $100,000 to $500,000, and the options which he had given on his stock were for very large amounts—from ten to twenty times the amount which passed between him and Murray. (2) Murray said that he would not consider the proposition to loan money on Switzer's stock as security—that he would as soon loan money on a shoal of fish in the Pacific Ocean—and yet this property, which was apparently deemed by him worthless as security for a loan of $20,000, was considered by him sufficiently valuable to induce him to pay $20,000 in cash for it. (3) Murray offered evidence to show that Switzer's stock was worth not more than $5,800, and yet he apparently prefers stock of that value to the return of his $20,000 and interest, and in this suit is resisting the offer of Switzer to make full restitution of the amount advanced by him, with interest thereon at eight per cent per annum. (4) Murray claims that he purchased Switzer's stock outright

and brings this suit to compel the transfer of the stock on the company's books, and yet he does not offer any explanation for his failure to have the transfer made at the time of the transaction.

The trial court was called upon to determine and apply the correct rule as to the burden of proof, and the finding made indicates that the court was correct in its determination. The authorities may fairly be said to be unanimous upon this subject. If the conveyance on its face is absolute, then the party asserting that it was intended as security only assumes the burden of showing such fact by clear and satisfactory proof. "The rule is different, however, in the case of a conditional sale of real estate, or where there is a contemporaneous agreement to reconvey. Here the courts incline to the theory of mortgage, and if a doubt arise whether a sale or a mortgage was intended, the doubt will be resolved in favor of mortgage." (8 Ency. of Evidence, 718.) To the same effect is 27 Cyc. 972, and 1 Jones on Mortgages, section 279.

In *Peagler v. Stabler*, 91 Ala. 308, 9 South. 157, it is said: "Courts of equity are not favorable to conditional sales, and if it be doubtful whether the transaction was a conditional sale or a mortgage, the courts incline to hold that the agreement was intended to be a mortgage."

But the rule is established in this state. In *Gassert v. Bogk*, above, this court said: "(5) Where there is a deed and a contract to reconvey, and oral evidence has been introduced tending to show that the transaction was one of security, and leaving upon the mind well-founded doubt as to the nature of the transaction, then courts of equity incline to construe the transaction as a mortgage."

While most of the cases cited above deal with deeds and mortgages of real estate, it is needless to say that the same rules apply to sales and pledges of personal property. Any facts and circumstances admissible to show that a conditional sale of real estate was intended as a mortgage are equally admissible to show that a conditional sale of personal property was in fact a pledge.

(*Eiland* v. *Radford,* above; 31 Cyc. 797, 790, and note.)   And the rule as to the burden of proof is the same.   "In case of doubt whether a transaction by which personal property is given as security is a pledge, or a sale, mortgage, or absolute assignment, the law favors the conclusion that it is a pledge." (31 Cyc. 797; Boone on Mortgages, sec. 288.)

In addition to all the evidentiary facts and circumstances referred to above as tending to support the trial court's finding, the learned judge who presided in the district court occupied the advantageous position, over the members of this court, in being able to hear the witnesses while upon the stand and to observe their demeanor.   He was therefore able to judge of their credibility from their appearance, their apparent frankness or lack of it, and their apparent fairness or lack of fairness.   If this court can overturn the finding of the lower court in this case, we can scarcely imagine a case in which we would not be justified in doing the same thing.   We think appellant has failed to maintain the burden, which he assumed, of showing that the evidence preponderates against the trial court's finding.

But much reliance is placed by appellant upon the case of *Morrison* v. *Jones,* 31 Mont. 154, 77 Pac. 507, which was a suit to have a deed declared to be a mortgage.   The deed was a bargain and sale deed, absolute on its face, by which Mrs. Morrison conveyed to Jones all her right, title and interest in and to certain property.   Contemporaneously with the execution and delivery of the deed, a contract in writing was executed and signed by Mrs. Morrison and Jones, which recites that Jones is the owner of the interest in the property; that Mrs. Morrison is desirous of purchasing such interest from Jones, and then proceeds to state the terms and conditions upon which such purchase might be made.   When the cause came before this court on appeal, it was said: "The written terms of the deed and the concurrent agreement appear to cover about every phase of the claim, and negative any claim of indebtedness."   From this it is apparent that this court considered the parties bound by the

terms of the contract, and did not consider any evidence *dehors* the record as thus made.  The case is easily distinguishable from the one now before us, and the decision does not conflict in the least with the conclusion we have reached here.

We do not find any error in the record.  The judgment and order are affirmed.

*Affirmed.*

· MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing granted September 12, 1910.


ON REHEARING.

(Submitted September 26, 1910.  Decided October 15, 1910.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On July 2 of this year the decision was made by this court in the above-entitled cause and the opinion filed.  Upon the former hearing and submission of the cause, counsel for appellant was absent and therefore unable to present the matter by way of oral argument.  Thereafter he presented a motion for a rehearing, and, because of his inability to orally argue the cause upon the first presentation, and because of his earnest insistence that this court did not give proper consideration to the decision in *Morrison* v. *Jones,* 31 Mont. 154, 77 Pac. 507, as it affects the decision of this case, a rehearing was granted and the cause argued by counsel for the respective parties and submitted.  Upon consideration of the matter on this rehearing, we have examined at length the record in *Morrison* v. *Jones.* With one exception, the facts of that case are set forth fully and correctly in the opinion as it appears in 31 Montana, above. The one fact which might have been added and which would only have fortified the decision is, that Mrs. Morrison received from Jones the contract to convey, dated May 2, 1900, and knew the contents thereof and of the deed of even date therewith,

before she executed the deed or received the contract. This fact appears from the record repeatedly and fully justified this court in saying: "The written terms of the deed and the concurrent agreement appear to cover about every phase of the case." The court might properly have omitted the word "about." With these facts all before us again, we are more firmly convinced than ever before that there is not anything in the decision of *Morrison* v. *Jones* to conflict in the slightest degree with our former decision in this case.

What is said in the written opinion heretofore filed on July 2, 1910, is adopted in full as the expression of our opinion now; and the judgment of the district court of Silver Bow county rendered and entered on the sixteenth day of October, 1909, and the order of that court made on the third day of January, 1910, overruling plaintiff's motion for a new trial are affirmed. *Remittitur* forthwith.

MR. JUSTICE SMITH concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.