NOLAN, RESPONDENT, *v.* BENNINGHOFF ET AL., APPEL-LANTS.

(No. 4,823.)

(Submitted May 31, 1922. Decided June 30, 1922.)

[208 Pac. 905.]

*Real Property—Equity—Deeds—Mortgages — Findings — Appeal and Error—Transcript—Rules of Supreme Court.*

Appeal and Error—Equity—Findings—Insufficiency of Evidence—Extent of Review.

1. In an equity case, where the contention is made that the evidence is insufficient to support the findings of the court, the supreme court in its review thereof will go no further than to determine whether there is a decided preponderance against them, and when it furnishes reasonable grounds for differing conclusions they will not be disturbed.

Same—Equity—Findings—Insufficiency of Evidence—Transcript—Rules.

2. Where on appeal in an equity case appellant asks for a review of the evidence to determine whether the findings are or are not supported by it, its presentation in narrative form is in violation of subdivision 3 of Rule VII of the Rules of the supreme court.

[64 Mont. 68.]

Real Property—Deed Absolute—When Mortgage—Parol Evidence.

    3.  A grantor may show by parol evidence that a deed absolute on its face was intended merely as security for the payment of a debt, to-wit, a mortgage.

Same—Deed Absolute—When Mortgage—Test for Determining Question.

    4.  The vital test in determining the question whether a deed absolute was intended merely as a mortgage to secure a pre-existing debt is whether after the execution and delivery of the deed the debt continued to exist.

Same—Deed Absolute—When Mortgage—Case at Bar.

    5.  Where the owner of lands valued at $39,000 at a time when he was in financial distress had executed a deed therefor in consideration of a debt amounting to $25,000 owing by him to the grantee, with the understanding that the deed should be redelivered to grantor on or before a certain date upon payment of the debt, and, payment not having been made, defendant commenced suit to collect the debt, the finding of the trial court that the deed had been given as security in the nature of a mortgage was proper under paragraph 4 above.

*Appeals from District Court, Musselshell County; Geo. P. Jones, Judge.*

ACTION by Fred W. Nolan against George F. Benninghoff and another. From the judgment for plaintiff and an order overruling defendants' motion for a new trial, they appeal. Affirmed.

Cause submitted on brief of Appellants.

*Messrs. Nichols & Wilson,* for Appellants.

*Messrs. Maris & Mercer,* for Respondent.

MR. COMMISSIONER LENTZ prepared the opinion for the court.

Action to have a deed decreed to be a mortgage. The case was tried by the court sitting without a jury. From a judgment and decree in plaintiff's favor and from an order overruling their motion for a new trial, defendants appeal.

---

    3.  Parol evidence that a written instrument, which on its face imports a complete transfer of a legal or equitable estate or interest in property, was intended to operate as a mortgage or pledge, see note in L. R. A. 1916B, 18.

    5.  Price as consideration in determining whether deed was intended as mortgage, see note in 20 Ann. Cas. 1199.

On May 4, 1917, plaintiff borrowed from defendants the sum. of $22,000, and executed two mortgages on 1,580 acres of land in Mussellshell county to secure the payment of the principal amount and a number of interest notes. The mortgages provided that on default in the payment of any one of the notes defendants could foreclose and recover the amount of the entire debt. Plaintiff defaulted in making the first payment of $700, which came due December 1, 1917, and also failed to pay the taxes. Later, on December 16, 1917, he deeded all the land to defendants, and at the same time entered into a written agreement, which after reciting the giving of the mortgages, provides as follows:

"Whereas, the said Fred W. Nolan and Minnie D. Nolan have defaulted in the payment of the interest on said mortgages according to the terms of the promissory notes and mortgages and are now unable to pay the same; and

"Whereas, to avoid the cost and expense of foreclosure and delay incident thereto, the said Fred W. Nolan and Minnie D. Nolan have on the date hereof executed and delivered to the first party a warranty deed for all of the real estate covered by the respective mortgages:

"Now, therefore, it is agreed as follows: The said second parties are hereby given the right until June 1, 1918, to find a purchaser for all of the real estate described in the deed above mentioned, and in the event that they find a purchaser who is able, ready and willing to buy the said real estate for the sum of $25,282.77 or any amount in excess thereof, the said first party agrees, upon the receipt of the said sum of $25,282.77, to execute a good and sufficient deed of conveyance to the said purchaser for all of said real estate. It is agreed that if the said purchaser shall pay for said real estate a sum exceeding $25,282.77, that the said second parties may retain for their own use and benefit all of the purchase price so paid in excess of the said sum of $25,282.77.

"In addition to the foregoing it is agreed that if prior to finding a purchaser and making a sale of said lands said first

[64 Mont. 68.]

party shall have expended any sum upon said real estate in the way of improvements, planting crops thereon, plowing the land or otherwise, that the fair and reasonable value of said improvements or the work so done shall be added to the purchase price above stated.

"It is expressly understood that this right or option to sell hereby granted the second parties expires at twelve o'clock midnight on the 1st day of June, 1918, and that thereafter the said second parties shall have no right either at law or in equity, or under this contract, in and to any of said real estate, and no extension of this contract can be made except in writing signed by each of the parties."

The sum of $25,282.77 was the total amount of all the notes, including interest accrued, and taxes at the time of the execution of the deed and agreement.

On May 31, 1918, defendants, in writing, extended the agreement as follows:

"Billings, Montana, May 31, 1918.

"Montana National Bank, Billings, Montana—

"Gentlemen: The attached contract between the undersigned and Fred W. Nolan and Minnie D. Nolan has been extended to September 1, 1918.

"You are agreed upon by the undersigned and Fred W. Nolan to hold said contract attached hereto together with the deed hereto attached from the undersigned to the said Fred W. Nolan, until September 1, 1918, and you are hereby authorized to deliver said deed to the said Fred W. Nolan at any time between this date and September 1, 1918, when he pays or causes to be paid to you for the undersigned, the sum of $25,796.98 together with interest thereon from this date at the rate of twelve per cent per annum, less the sum of one thousand dollars this day paid.

"FARM MORTGAGE CORPORATION,

"By G. C. MYERS, Sec."

The lower court found that the indebtedness represented by the promissory notes is, and ever since May 4, 1917, has been,

a valid and existing obligation against the plaintiff; that the deed in question was given as a further security for said indebtedness and is in the nature of a mortgage.

Defendants contend on this appeal that the evidence is insufficient to support the findings of fact and conclusions of law and the judgment. We are therefore called upon under the provisions of section 8805, Revised Codes of 1921, to review the questions of fact arising upon the evidence presented in the record of the proceedings in the court below. The review may go no further, however, than to determine whether there is a preponderance of the evidence against the findings of the trial court. They will not be set aside unless there is a decided preponderance against them; and, when the evidence, fully considered, furnishes reasonable grounds for differing conclusions, the findings will not be disturbed. (*Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565; *Robitaille* v. *Boulet,* 53 Mont. 66, 161 Pac. 163; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76; *Murray* v. *Butte-Monitor T. M. Co.,* 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132.)

[1]

Although asking a review of the entire record and a reversal of the findings of the trial court, defendants, in violation of the rules of this court, have presented a transcript in narrative form, which renders some of the vital parts of the evidence difficult to understand and liable to a misinterpretation, and some of the documentary evidence is attempted to be recited in substance only, with many paragraphs omitted altogether. But in the view we take of the matter there is ample evidence in the record as presented to sustain the findings of the court, and we will therefore pass the infraction of the rules without further notice and come to a conclusion in the matter.

[2]

The law is well established that a grantor may show by parol evidence that a deed absolute on its face was intended merely as security for the payment of a debt, and thus to be in the nature of a mortgage, and this is to be ascertained

[3]

from an examination of all the facts and circumstances surrounding the transaction. It is solely a question as to what was the real intention of the parties. The vital test in deter-[4] mining that question in this case is whether there was a continued existence of the original debt. (27 Cyc. 1007–1010; *Robitaille* v. *Boulet, supra; Morrison* v. *Jones,* 31 Mont. 154, 77 Pac. 507; *Gassert* v. *Bogk,* 7 Mont. 585, 1 L. R. A. 240, 19 Pac. 281; *Totten* v. *Totten,* 294 Ill. 70, 128 N. E. 295; *Chapman* v. *Hicks,* 41 Cal. App. 158, 182 Pac. 336.)

Plaintiff testified that the deed was given merely as addi-[5] tional security when the first interest note became due, and under a threat by defendants that if he did not execute it they would immediately commence foreclosure proceedings and would run the costs and attorney's fees up so high there would be nothing left; that it was never the intention of the parties to cancel the original indebtedness, and that it never was in fact canceled.

The record further shows that at the time of the execution of the deed and contract, and for a long time thereafter, the notes were held by third parties as collateral security for the payment of debts owing by defendants; that they have never been surrendered to plaintiff or canceled, and are now in defendants' possession; that plaintiff is still in possession of the land, and has had portions of it rented to third persons and has collected and retained all the rents.

Several of the defendants' witnesses, including the attorneys who drew up the deed and contract, and received plaintiff's acknowledgment to them, testify that the whole matter was thoroughly explained to plaintiff at the time of their execution, and that it was plainly understood and agreed by all parties that the original debt was canceled, and that the deed would operate as an absolute transfer to defendants of all of plaintiff's title and interest in the lands therein described; that plaintiff thereafter paid an attorney a fee of $500 to assist him in procuring the extension of the contract and in seeking a buyer for the land or floating a new loan.

The record further shows that no part of the debt has been paid except the $1,000 mentioned in the extension to the contract, and that defendants have paid all the taxes.

Defendants themselves introduced evidence establishing the value of the land at the date of the transaction at more than $39,000, and it is admitted that the total amount plaintiff owed defendants, including interest and taxes at the time the deed was executed, was the sum of $25,282.77, mentioned in the contract. If the transaction resulted in an absolute conveyance and cancellation of the debt as contended by defendants, then plaintiff conveyed land admittedly worth over $39,-000 in payment of a debt of $25,282.77. The only reasonable explanation of his action is that plaintiff was under the pressure of financial distress at the time of the transaction.

In *Murray* v. *Butte-Monitor T. M. Co. et al., supra,* this court approved the rule stated in 27 Cyc. 972, as follows: " 'If the grantor was severely pressed for money at the time of the transfer, so as not to be able to exercise a perfectly free choice as to the disposition of his property, and raised the sum needed by conveying the property in fee with a right of repurchase, his necessitous condition, especially in connection with the inadequacy of the price, will go far to show that a mortgage was intended.' And again, at page 1014: 'If the grantor in a deed absolute in form, but alleged to have been intended as a security, was financially embarassed at the time of its execution, being sorely pressed for money, and therefore at the mercy of his creditor and unable freely to dictate the terms of the security, this circumstance will be considered, as tending to show the intention to create a mortgage.' " (*Bright* v. *Wagle,* 3 Dana (Ky.), 252; *Russell* v. *Southard,* 12 How. 139, 13 L. Ed. 927 [see, also, Rose's U. S. Notes]; 1 Jones on Mortgages, 5th ed., sec. 275; *Husheon* v. *Husheon,* 71 Cal. 407, 12 Pac. 410; *Glass* v. *Hieronymus,* 125 Ala. 140, 82 Am. St. Rep. 225, 28 South. 71; *Campbell* v. *Dearborn,* 109 Mass. 130, 12 Am. Rep. 671; Jones on Pledges, sec. 20.)

The record also shows that on December 16, 1918, one year

after the deed and contract were executed, the mortgages were marked satisfied on the county records, but on December 8, 1919, and seven months after the case at bar was filed, defendants commenced an action demanding foreclosure and a deficiency judgment on said notes and mortgages, which action is still pending against plaintiff. What more conclusive method could defendants adopt to demonstrate that they at least considered the original debt still in force than by maintaining an action in court to collect it? The debt being still in existence, the deed did not operate as payment and is nothing more than a mortgage.

After a careful review of the entire record, we are unable to find that the evidence introduced preponderates against the findings of the trial court, and therefore recommend that the judgment and order be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

*Affirmed.*